Argued and submitted May 7, 2019, decision of Court of Appeals and judgment of circuit court affirmed May 7, 2020

STATE OF OREGON,
*Respondent on Review,*

*v.*

HANAD ALI HAJI,
*Petitioner on Review.*

(CC 16CR02527) (CA A162905) (SC S066254)

462 P3d 1240

Defendant was charged with seven offenses after twice entering the victim's apartment on the same day and committing various crimes. After determining that the indictment could be challenged by demurrer because the statutory basis for joining those offenses was not expressly alleged, the state obtained leave from the circuit court to amend the indictment by adding allegations specifying the statutory basis for joinder, without adding factual allegations about the crimes. Defendant was convicted of some of the charges, and the Court of Appeals affirmed. *Held*: (1) ORS 132.560 does not require a grand jury to allege the statutory basis for joinder of multiple charges in an indictment; (2) Article VII (Amended), section 5(6), of the Oregon Constitution permits a district attorney to amend an indictment that is defective in form; a defect "in form" is a matter that is not essential to show that a crime has been committed; and (3) the additional allegations were "in form," and so the circuit court did not err in permitting the district attorney to amend the indictment.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

On review from the Court of Appeals.*

Ernest G. Lannet, Chief Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* On appeal from Multnomah County Circuit Court, Thomas Michael Ryan, Judge (judgment), Bronson D. James, Judge (amendment), 293 Or App 202, 426 P3d 680 (2018).

Before Walters, Chief Justice, and Balmer, Nakamoto, Flynn, Duncan, and Nelson, Justices, and Landau, Senior Justice pro tempore.**

NAKAMOTO, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

Duncan, J., dissented and filed an opinion in which Walters, C. J., joined.

_____

** Garrett, J., did not participate in the consideration or decision of this case.

**NAKAMOTO, J.**

After a grand jury issued an indictment charging defendant with multiple offenses, the district attorney determined that the indictment could be challenged by demurrer because the basis for joining those offenses was not expressly alleged. Instead of seeking another indictment from the grand jury, the district attorney obtained leave from the trial court to amend the indictment by adding allegations specifying the statutory basis for joinder, without adding factual allegations about the crimes. Defendant was convicted on some of the charges at trial, and the Court of Appeals affirmed. *State v. Haji*, 293 Or App 202, 207, 426 P3d 680 (2018).

The question on review is whether a district attorney may add allegations specifying the statutory basis for joinder of multiple offenses to an indictment instead of resubmitting the case to a grand jury. We conclude that neither the statute permitting joinder of multiple offenses in a single indictment nor Article VII (Amended), section 5(6), of the Oregon Constitution precludes a district attorney, with approval of the trial court, from amending an indictment to add allegations specifying the statutory basis for joinder of multiple offenses. We affirm the decision of the Court of Appeals, based in part on different reasoning, and affirm the judgment of the circuit court.

## I.  BACKGROUND

As background, the state's theory of the case was that defendant twice entered the apartment where the victim lived, committing crimes. The first time he entered the apartment, defendant took a tablet computer and threatened the victim with a gun and then a kitchen knife, which he took when he left. Several hours after the first incident, the victim returned and found defendant inside the apartment again. The victim called the police, who soon found and arrested defendant, still in possession of his firearm.

The salient facts are procedural. The state charged defendant with seven offenses in a single indictment returned by a grand jury: one count of first-degree robbery and one count of first-degree robbery with a firearm, ORS

164.415; two counts of first-degree burglary with a firearm, ORS 164.225; one count of unlawful use of a weapon and one count of unlawful use of a weapon with a firearm, ORS 166.220; and one count of felon in possession of a firearm, ORS 166.270. The indictment stated that the charged conduct occurred "on or about January 14, 2016" and described each offense in the language of the applicable criminal statutes. The indictment did not expressly state any statutory basis for joinder of the counts. Nothing on the face of the indictment linked any of the counts specifically to either the first or the second entry into the victim's apartment or, for that matter, indicated that the charges stemmed from two incidents.

Not long after that, the Court of Appeals held in *State v. Poston*, 277 Or App 137, 144, 370 P3d 904 (2016), *adh'd to on recons*, 285 Or App 750, 399 P3d 488, *rev den*, 361 Or 886 (2017), that a charging instrument is required to allege "the basis for the joinder of the crimes that are charged in it." Anticipating a demurrer by defendant, the state moved for leave to amend the indictment to comply with the holding in *Poston*. Specifically, the state sought to add to each count an identical allegation stating two of the three permissible statutory bases for joinder:

> "This count constitutes part of a *common scheme or plan* based on two or more acts or transactions with the other counts of this indictment. This count is *of the same and similar character* as the conduct alleged in the other counts of this indictment. This count is connected together by two or more acts or transactions with the other counts of this indictment."

(Emphases added.) *See* ORS 132.560(1)(b)(A), (C) (permitting joinder of offenses "[o]f the same or similar character" or "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan").

The state contended that those were amendments of "form" and, therefore, authorized by Article VII (Amended), section 5(6). That provision states that a "district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form." Defendant filed a written objection

to the state's motion, asserting that the district attorney could not add the allegations stating the statutory bases for joinder without resubmission of the case to the grand jury, because such amendments would be of substance rather than "form."

At the hearing on the state's motion, the trial court granted defendant leave to file a demurrer to bring the case into the correct legal posture, instructed the state to file a short factual background of the charged conduct, which the state did, so that the court could determine the nature of the evidence as to each count, and took the matter under advisement. Accordingly, defendant filed a demurrer, asserting that the indictment on its face failed to meet the joinder requirements of ORS 132.560(1)(b) and should be dismissed under *Poston*. Ultimately, the trial court granted the state's motion for leave to amend the indictment and, consequently, denied defendant's demurrer.

After a jury trial, defendant was convicted of one count of first-degree burglary with a firearm, unlawful use of a weapon with a firearm, and felon in possession of a firearm. The jury acquitted him of the remaining four counts.

Defendant appealed and, as relevant here, assigned error to "the trial court's allowance of the state's motion to amend the indictment and its consequent denial of his demurrer." *Haji*, 293 Or App at 205. The Court of Appeals upheld the trial court's rulings. *Id*. at 207.

In reaching its conclusion, the Court of Appeals focused on "whether the omission of th[e] allegations [stating the statutory basis for joinder] from the original indictment was a defect of 'form' within the meaning of Article VII (Amended), section 5(6)." *Haji*, 293 Or App at 205-06. It resolved that question by turning to three considerations that this court had articulated in *State v. Wimber*, 315 Or 103, 843 P2d 424 (1992), to determine whether additional allegations limiting the date range of some of the charged crimes were amendments of "form" for purposes of Article VII (Amended), section 5(6):

"(1)  Did the amendment alter the essential nature of the indictment against defendant, alter the availability to

him of defenses or evidence, or add a theory, element, or crime? * * *

"(2)   Did the amendment prejudice defendant's rights to notice of the charges against him and to protection against double jeopardy? * * *

"(3)   Was the amendment itself sufficiently definite and certain?"

*Haji*, 293 Or App at 206 (quoting *Wimber*, 315 Or at 114-15).

Analyzing the considerations from *Wimber*, the Court of Appeals concluded that the joinder allegations that the district attorney had added to the indictment were matters of "form" and, thus, constitutionally permissible. *Haji*, 293 Or App at 206-07. First, the court determined that the amendments did not alter the "'essential' nature" of the indictment; the amendments only "demonstrate[d] that the charges met the statutory procedural standard for being tried as part of a single case," and they neither changed the defenses available to defendant, altered the charges in a way that would affect the availability of evidence, nor added a new theory, element, or crime. *Id*. As to the second consideration, the court concluded that the amendments did not prejudice defendant's right to notice or implicate double jeopardy. *Id*. at 207. Finally, the Court of Appeals determined that the amendments, by tracking the wording of the joinder statute, were "sufficiently clear and definite" under *Poston* to properly allege the basis for joinder. *Id*.

The Court of Appeals also concluded that, because the amended indictment comported with *Poston*, the trial court's denial of defendant's demurrer was proper. *Id*. We allowed defendant's petition for review to address whether the trial court erred in allowing the district attorney to amend the indictment to add allegations specifying the statutory bases for joinder of multiple felony charges.

## II.   ANALYSIS

Under ORS 132.560(1), an indictment generally must charge only one offense, but the state may charge a defendant with multiple offenses in a single indictment when the offenses "are alleged to have been committed by the same person or persons" and those offenses are "[o]f the same or

similar character"; "[b]ased on the same act or transaction"; or "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." We recently confirmed the Court of Appeals' conclusion in *Poston*: An indictment charging a defendant with multiple offenses must contain the basis for joinder of multiple offenses under ORS 132.560(1)(b). *State v. Warren*, 364 Or 105, 127, 430 P3d 1036 (2018). As we explained in *Warren*, "it usually is sufficient for the state to allege the basis for joinder by using the language of the joinder statute." 364 Or at 120 (citing *State v. Huennekens*, 245 Or 150, 154, 420 P2d 384 (1966)).

On review, defendant contends (1) that ORS 132.560 and Article VII (Amended), section 5(6), of the Oregon Constitution require a grand jury—and only a grand jury, not a district attorney—to find evidence supporting an allegation that a statutory basis for joinder exists and (2) that an indictment that omits that allegation is deficient in substance. The state responds that the trial court had the authority to allow the district attorney to make the amendment, because the grand jury does not have exclusive responsibility under the statute or the Oregon Constitution to allege the statutory basis for joinder.[1]

We start our analysis with the role of the grand jury under the joinder statute, because we first attempt to resolve cases on subconstitutional grounds when they are available. *State v. Conger*, 319 Or 484, 490, 878 P2d 1089 (1994). After concluding that ORS 132.560 does not require a grand jury—and only a grand jury—to allege the statutory basis for joinder of multiple charges in an indictment, we address whether Article VII (Amended), section 5(6), contains that requirement and conclude that it does not.

A.   *Role of the Grand Jury Under ORS 132.560*

Although defendant relies almost exclusively on his constitutional argument, defendant implies that the joinder

---

[1] The state adds that, in any event, the trial court did not commit reversible error for either of two reasons: the original indictment sufficiently alleged a proper basis for joinder or, alternatively, if the indictment was facially deficient, defendant failed to establish actual prejudice as a result. Because of our resolution of the case on the state's primary argument, we need not reach the state's backup arguments.

statute itself requires a grand jury to find and allege the statutory basis for joinder of multiple offenses in the indictment. We agree with the state that ORS 132.560 does not require a grand jury to find and allege the statutory basis for joinder.

We start our construction of the statute with its text. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (stating that we examine a statute's text and context, together with helpful legislative history). The statute contains four subsections. In the first subsection, the law states, and provides exceptions to, the general rule that a charging instrument must charge one offense:

"A charging instrument must charge but one offense, and in one form only, except that:

"(a)   Where the offense may be committed by the use of different means, the charging instrument may allege the means in the alternative.

"(b)   Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A)   Of the same or similar character;

"(B)   Based on the same act or transaction; or

"(C)   Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

ORS 132.560(1).

In the second subsection, the statute permits a court to consolidate two or more charging instruments upon the court's determination that they meet the joinder requirements of ORS 132.560(1)(b): "If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated." ORS 132.560(2).

The third subsection permits a court to remedy prejudice caused by joinder of offenses under ORS 132.560(1):

"If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under

subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

ORS 132.560(3). Finally, the statute defines "charging instrument":

"As used in this section, 'charging instrument' means any written instrument sufficient under the law to charge a person with an offense, and shall include, but not be limited to, grand jury indictments, informations, complaints and uniform traffic, game or boating complaints."

ORS 132.560(4).

The statute's text does not support defendant's view that a grand jury must allege the statutory basis for joinder of multiple charges. First, no part of the statute expressly requires a grand jury to find and allege one or more of the grounds listed in ORS 132.560(1)(b) for joining multiple charges in a single charging instrument. Indeed, the term "grand jury" appears only in the definition of "charging instrument" in subsection (4), which includes "grand jury indictments" as well as charging instruments that do not involve grand juries at all. ORS 132.560(4). Moreover, while subsection (4) appears to describe the kinds of charging instruments subject to the joinder provisions in subsections (1) through (3), nothing specifies who must determine whether the allegations in the charging instrument support joinder.

Second, the text of ORS 132.560(2) undercuts defendant's view that the grand jury has the sole responsibility to find and allege the statutory basis for joinder of multiple charges. Subsection (2) permits a court to order two or more charging instruments to be consolidated—without resubmission of the combined charges to a grand jury in the case of a felony indictment—when they "are found in circumstances described in subsection (1)(b)," that is, when the charging instruments show grounds for joinder of the charges for trial in a single case, as described in subsection (1)(b). The inclusion of that provision in the same statute that lists grounds for joinder suggests that the legislature did not imbue grand juries with exclusive authority to determine whether multiple charges should be included in a

single indictment.[2] Based on the text alone, we do not understand ORS 132.560 to give the grand jury the sole authority to find and allege the statutory basis for joinder of multiple charges in an indictment. *See State v. McNally*, 361 Or 314, 328, 392 P3d 721 (2017) ("It is axiomatic that this court does not insert words into a statute that the legislature chose not to include.").

And when the statutory text is viewed in the context of other statutes within ORS chapter 132, the potential for reading ORS 132.560 to require a grand jury to find and allege the statutory basis for joinder does not improve.[3] A grand jury is defined in ORS chapter 132, which is devoted to grand juries and accusatory instruments, as "a body of seven persons drawn from the jurors in attendance upon the circuit court at a particular jury service term, having the qualifications prescribed by ORS 10.030 and sworn to inquire of crimes committed or triable within the county from which they are selected." ORS 132.010. The description of the grand jury's duties and procedures is primarily contained within ORS 132.310 to 132.430. Notably, the joinder statute is not within that range of statutes, and none of those statutes ascribes to the grand jury the sole power to determine whether grounds justifying joinder of multiple charges in an indictment exist. Rather, overall, the grand jury's role and duties as described in ORS chapter 132 appears focused on investigating whether the state may charge someone with crimes.[4]

---

[2] In *State v. Boyd*, this court suggested that to avoid the risk of "forfeiting the opportunity to prosecute again" by virtue of a criminal defendant's double jeopardy defense, a prosecutor who is forced to make a difficult choice about whether charges are sufficiently interrelated for joinder should "obtain separate indictments and then make a timely pretrial motion to consolidate the charges for trial." 271 Or 558, 567-68, 533 P2d 795 (1975) (internal quotation marks and citation omitted).

[3] Neither party presents legislative history concerning the enactment of ORS 132.560.

[4] *See, e.g.*, ORS 132.310 (the grand jury "shall retire into a private room and may inquire into crimes committed or triable in the county and present them to the court, either by presentment or indictment"); ORS 132.380 (the grand jury "may indict a person for a crime when it believes the person guilty thereof, whether such person has been held to answer for such crime or not"); ORS 132.320(1) (in the "investigation of a charge for the purpose of indictment, the grand jury shall receive no other evidence than such as might be given on the trial of the person charged with the crime in question," subject to exceptions for

Other statutes in ORS chapter 132 concern the district attorney's role with respect to the grand jury and indictments, and those do not address whether the grand jury alone decides and alleges grounds that render it procedurally proper for the state to include multiple charges in a single indictment under ORS 132.560(1). Pursuant to ORS 132.330, the district attorney "may submit an indictment to the grand jury in any case when the district attorney has good reason to believe that a crime has been committed which is triable within the county." And "when required by the grand jury," the district attorney "must prepare indictments or presentments for it and attend its sittings to advise it in relation to its duties or to examine witnesses in its presence." ORS 132.340. Neither statute addresses whether the grand jury's duties require it to consider whether joinder of crimes in one indictment is proper.

Finally, the statute that sets out the required contents of a grand jury indictment, ORS 132.550, suggests that specification of the statutory basis for joinder of multiple counts is not necessarily submitted to the grand jury. That statute provides:

"The indictment shall contain substantially the following:

"(1)   The name of the circuit court in which it is filed;

"(2)   The title of the action;

"(3)   A statement that the grand jury accuses the defendant or defendants of the designated offense or offenses;

"(4)   A separate accusation or count addressed to each offense charged, if there be more than one;

"(5)   A statement in each count that the offense charged therein was committed in a designated county;

"(6)   A statement in each count that the offense charged therein was committed on, or on or about, a designated date, or during a designated period of time;

---

written reports and testimony in certain types of cases); ORS 132.370(1) (procedures for when "the grand jury is in doubt whether the facts, as shown by the evidence before it, constitute a crime in law or whether the same has ceased to be punishable by reason of lapse of time or a former acquittal or conviction").

"(7)   A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended;

"(8)   The dates of all grand jury proceedings related to the offense or offenses charged;

"(9)   The signatures of the foreman and of the district attorney; and

"(10) The date the indictment is filed with the clerk of the court."

Thus, ORS 132.550 requires that an indictment establish that the grand jury accuses the defendant of designated offenses, describe the acts constituting the offenses, and describe where and when the offenses were committed. The statutory basis for joinder of multiple charges is not listed as part of the required contents of an indictment issued by the grand jury, even though the statute itself anticipates that more than one offense might be charged in the indictment. *See* ORS 132.550(3)‑(6), (8).

In sum, although ORS 132.560(1)(b) does require that an indictment establish a statutorily permissible basis for joinder of multiple offenses, we reject the argument that the joinder statute implicitly designates the grand jury as the actor required to make that determination. That conclusion takes us to defendant's more substantial constitutional argument.

B.   *Role of the Grand Jury Under Article VII (Amended), section 5, of the Oregon Constitution*

For his constitutional argument, defendant relies on Article VII (Amended), section 5(6). As relevant here, Article VII (Amended), section 5, provides:

"(2)   A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment.

"(3)   Except as provided in subsections (4) and (5) of this section, a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.

"* * * * *

"(6)   An information shall be substantially in the form provided by law for an indictment. *The district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form.*"

(Emphasis added.)

Defendant contends that the district attorney's amendment of the indictment in this case was impermissible under Article VII (Amended), section 5(6). He maintains that the indictment was defective in substance and, therefore, not "defective in form." The state argues that the amendment addressed a defect in form, and it disputes that any part of Article VII (Amended), section 5, assigns to grand juries the sole responsibility to find and plead allegations supporting the joinder of multiple offenses in a single indictment.

1.   Reinke *and* Wimber

To clarify the analytical approach we take, we first address two precedents from this court that figure prominently in the parties' arguments. The state initially contends that, in *State v. Reinke*, 354 Or 98, 309 P3d 1059, *adh'd to as modified on recons*, 354 Or 570, 316 P3d 286 (2013), this court already definitively construed Article VII (Amended), section 5, and that *Reinke* resolves the case in its favor by precluding defendant's argument. We disagree that *Reinke* is dispositive.

*Reinke* involved the defendant's enhanced sentence as a dangerous offender. The applicable statutes required the district attorney to give the defendant timely written notice of sentence enhancement facts but did "not require those facts to be found by the grand jury and pleaded in the indictment." *Reinke*, 354 Or at 102 (citation omitted). We described the issue on review as "whether the Oregon Constitution requires that the facts necessary to impose a dangerous offender sentence be found by the grand jury and pleaded in the indictment." *Id.* at 100.

The state bases its argument on the court's statement in *Reinke* that Article VII (Amended), section 5,

"requires the grand jury to find and plead *only the elements of the crime* as defined by the legislature." 354 Or at 112 (emphasis added). The state submits that this court concluded that the grand jury's role is limited to finding and pleading elements of crimes, which does not extend to determining the statutory basis for joining crimes in a single indictment.

But in arguing that a grand jury was required to have found and alleged the statutory facts required for imposing an enhanced dangerous offender sentence, the defendant in *Reinke* relied on Article VII (Amended), section 5(3)—not section 5(6), on which defendant relies. Section 5(3) provides that "a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury." The defendant in *Reinke* argued that the phrase "any crime punishable as a felony" in section 5(3) included both the elements of the underlying crime and "any fact that authorizes an enhanced sentence for that crime[.]" 354 Or at 106. Thus, *Reinke* was a case construing the term "crime" in Article VII (Amended), section 5(3), even though this court broadly couched its conclusion as pertaining to "Article VII (Amended), section 5."[5]

We acknowledge, as the state's argument reflects, that the opinion in *Reinke* can be read as a conclusion about the extent of the grand jury's role with respect to indictments generally. We are reluctant, though, to rely solely on *Reinke* when the court in that case was presented with, and resolved, arguments concerning the meaning of Article VII (Amended), section 5(3), that defendant here does not make. As we later discuss, that case provides context for our construction of Article VII (Amended), section 5(6). But *Reinke* is not, by itself, dispositive in this case.

---

[5] In full, the court concluded as follows:

"Considering the text, context, and legislative history of Article VII (Amended), section 5, we conclude that section 5 requires the grand jury to find and plead only the elements of the crime as defined by the legislature. Article VII (Amended), section 5, does not contemplate, as a matter of state constitutional law, a 'crime' that differs from the conventional crime that the legislature has defined."

*Reinke*, 354 Or at 112-13.

The second precedent we address is *Wimber*, with its multifactor test. As we previously recounted, the Court of Appeals relied on that test to conclude that an omission of statutory joinder allegations was a defect in form and that therefore the district attorney's amendment was proper. *Haji*, 293 Or App at 206-07. On review, the parties dispute how to apply the *Wimber* test. Defendant argues that the test should only apply to amendments relating to a single-count indictment, or that, if *Wimber* supplies the controlling test, then the Court of Appeals incorrectly decided that the original indictment in this case was defective merely in form. The state argues that the *Wimber* test does control and that the Court of Appeals properly applied it in this case. We do not share either party's perspective and conclude that the test set out in *Wimber* does not apply to or control the outcome of the issue presented in this case.

In *Wimber*, the grand jury indictment alleged that all 12 crimes occurred between certain dates in 1984 and 1989. 315 Or at 105. At the beginning of trial, the defendant contended that the charges were time-barred. *Id.* at 106. The state and the defendant disputed whether a six-year or a three-year limitation period applied to the crimes (three counts of first-degree sodomy, three counts of first-degree rape, and six counts of first-degree sexual abuse). *Id.* at 105-06. The trial court amended the indictment so that three of the sexual abuse counts fell within the three-year limitation period that the defendant argued applied, and the other three sexual abuse counts fell outside that limitation period. *Id.* at 107. In other words, the trial court reduced the date range applicable to each of the sexual abuse counts. The jury then convicted the defendant on all three amended charges within the three-year limitation period, and the trial court entered a judgment of conviction on those charges. *Id.* at 108.

On review, this court applied a multifactor test that it derived from two earlier cases and determined that the trial court had made "a permissible amendment as to a defect in the form of the indictment." 315 Or at 114-15. In making that determination, this court examined the time period during which all the charged crimes had been committed, as found by the grand jury, and the trial court's

narrowing of that period for the sexual abuse counts. It appears that an integral part of this court's determination that the amendment did not alter the essential nature of the indictment, *id.* at 114, was its conclusion that "[t]ime is not an essential element of the offenses charged in the indictment at issue," *id.* at 110. Importantly, this court's test in *Wimber* was focused on changes to the allegations concerning the crimes charged, as found by the grand jury.

Here, by contrast, the district attorney's amendment did not change a fact about the crimes that the grand jury had already found. Instead, the amendment added a component, articulating the statutory basis for joinder of the charges that needed to appear on the face of the indictment as a matter of law for notice purposes, pretrial, so that defendant and the trial court could understand whether joinder was proper. *See Warren*, 364 Or at 120 (explaining that notice is "necessary for the defendant to make an informed decision about whether to demur to the indictment on the ground that the allegations are insufficient to support joinder and, later, to make an informed decision about whether to move to sever on the ground that the evidence is insufficient to support joinder" and "for the trial court to make informed rulings on such demurrers and motions"). The *Wimber* test, therefore, does not apply in situations such as this one.

Although we revisit both *Reinke* and *Wimber* in our contextual analysis of Article VII (Amended), section 5(6), neither case supplies a ready-made resolution of the issue presented. Accordingly, we undertake an analysis of Article VII (Amended), section 5(6), to determine whether the district attorney was barred from amending the indictment in this case by adding joinder allegations.

2. *Applicable interpretive principles*

The genesis of Article VII (Amended), section 5(6), affects the interpretive principles that we apply in construing it. The people enacted the current version of Article VII (Amended), section 5, in 1974 upon legislative referral to Oregon voters. SJR 1 (1973) (referring the measure); Or Laws 1975, p 6 (recording passage at the November 1974 election). The original version of section 5 was created

through the initiative process in 1910, when voters approved a new Article VII. Or Laws 1911, pp 7-8 (recording passage at the November 1910 election). Article VII (Amended), section 5(6), imports the key phrase at issue in this case—the "district attorney may file an amended indictment whenever an indictment [is] *** defective in form"—from the 1910 version of section 5, which in turn was taken from the 1908 amendment of Article VII (Original), section 18, of the Oregon Constitution. Or Laws 1909, p 12 (recording passage at the June 1908 election).[6]

When amended constitutional provisions are adopted by voters, we attempt to "discern the intent of the voters" by examining the text of the provision itself and its context. *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993). We may "examine the historical context" of the amendment's adoption "for possible evidence of a settled understanding" of its terms. *Couey v. Atkins*, 357 Or 460, 492-93, 355 P3d 866 (2015). As a corollary to that rule, when the disputed text of an amended constitutional provision consists of text reincorporated from a prior version of the constitutional provision, this court will examine the enactment of that prior version in our effort to determine the meaning of the amended provision. *AAA Oregon/Idaho Auto Source v. Dept. of Rev.*, 363 Or 411, 417-18, 423 P3d 71 (2018). As we later discuss, defendant places significant weight on what voters intended in 1908 when they first adopted the disputed phrase as part of the Oregon Constitution.

In *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559 n 7, 871 P3d 106 (1994), this court emphasized that we must use caution before ending a textual analysis of a constitutional amendment without considering its history. More recently, we clarified in *Couey* that, when we construe constitutional amendments adopted by voters, we will "consider the measure's history, should it appear useful to our analysis, without necessarily establishing the

_____

[6] We note that the relevant constitutional provision was amended on one additional occasion between 1910 and 1974. In 1958, the voters approved an amendment that authorized the legislature to enact laws permitting the calling of a special grand jury. Or Laws 1959, p 6 (recording passage at the November 1958 election); Official Voters' Pamphlet, General Election, Nov 4, 1958, 26. That amendment does not inform our analysis, and we do not discuss it further.

existence of multiple reasonable constructions of the provision at issue." 357 Or at 490 (internal quotation marks and citation omitted). As a result, there is now little practical distinction between our methodology for interpreting original constitutional provisions and provisions later adopted by voters. *Id.* That history includes "sources of information that were available to the voters at the time the measure was adopted and that disclose the public's understanding of the measure." *AAA Oregon/Idaho Auto Source*, 363 Or at 418 (internal quotation marks and citation omitted); *see also State v. MacBale*, 353 Or 789, 804, 305 P3d 107 (2013) (examining "a more complete look at the circumstances surrounding the creation of Article I, section 10" to help determine which types of court proceedings the framers would have considered to be properly closed to the public). With those principles to guide us, we turn to conduct that analysis.

3.   *Text and context*

We begin with the text and context of Article VII (Amended), section 5(6). For convenience, we repeat that section 5(6) provides:

> "An information shall be substantially in the form provided by law for an indictment. *The district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form.*"

(Emphasis added.)

At the outset, several observations can be made from the text of Article VII (Amended), section 5(6). First, Oregon voters in 1974 would have understood from the plain meaning of the text that situations would arise in which an indictment would need to be amended and that some of those amendments could be accomplished by the district attorney simply filing an amended indictment instead of presenting the case to the grand jury again. Second, the text does not address multiple-count indictments and does not assign, at least expressly, the responsibility of determining the basis for joinder to the grand jury. And third, the text does not define a defect "in form" that would permit a district attorney to file an amended indictment.

Those same observations apply to the text of Article VII (Original), section 18, which first included the phrase "held to be defective in form." As amended in 1908, Article VII (Original), section 18, provided:

> "The Legislative Assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and out of the whole number in attendance at the court, seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment. No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State, except upon indictment found by a grand jury. *Provided, however,* that any district attorney may file an amended indictment whenever an indictment has, by a ruling of the court, been held to be defective in form."

(Emphasis in original.)

Because Article VII (Amended), section 5(6), expressly permits a district attorney to amend an indictment, the parties focus their arguments on what it means for an indictment "to be defective in form" and whether that phrase encompasses an amendment to allege the statutory bases supporting joinder of multiple offenses.[7] Although the parties largely disagree on the proper approach to the analysis and on their conclusions, they do agree that defects "in form" are to be distinguished from defects in the substance of an indictment. We concur with that starting point in the analysis.

In analyzing the meaning of the text, "words of common usage that are not defined" typically are to be given

---

[7] The dissent adds that the trial court erred by allowing the district attorney's amendment and disallowing defendant's demurrer, because the dissent views the indictment as so ambiguous that it failed to give defendant enough information about the crimes being charged. *See, e.g.*, 366 Or at 421 (Duncan, J., dissenting). But, as noted in the statement of facts, the grand jury found historical facts as to each of the charges alleged in the indictment, and defendant's demurrer was based solely on the failure of the indictment to contain allegations identifying the statutory basis for joinder—not its failure to give defendant notice of the nature of the charges against him. Specifically, defendant contended that the indictment failed to meet the joinder requirements on its face because it failed "to allege that the charged offenses are either (1) of the same or similar character, (2) based on the same act or transaction, (3) or based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

their "plain, natural, and ordinary meaning." *Ecumenical Ministries*, 318 Or at 560. But when the words used in a constitutional provision enacted by initiative or referendum "have a well-defined legal meaning, we will give the words that meaning in construing the provision." *Ester v. City of Monmouth*, 322 Or 1, 9, 903 P2d 344 (1995); *see also King v. City of Portland*, 2 Or 146, 154-55 (1865) ("If, when our Constitution was made, certain words or sentences had obtained a certain signification or force, either by common usage or legal decision, it must be presumed, if found in that instrument that they bear that established meaning, unless plainly from the context or other provision, a different meaning is certainly intended.").

Here, the 1974 voters approved Article VII (Amended), section 5(6), with the term "defective in form," a legal term of art taken from Article VII (Original), section 18 (1908). When voters approved section 18 in 1908, the term "form" appeared in multiple places in the then most recent compilation of the Oregon Criminal Code to describe a type of defect in an indictment. For example, section 1372 provided that if "the indictment were dismissed upon a demurrer to its form or substance," it was not deemed a former acquittal. The Codes and Statutes of Oregon, title XVIII, ch IX, § 1372 (Bellinger & Cotton 1901). The term also appeared in the next section, which described what was deemed a former acquittal: "When, however, the defendant was acquitted on the merits, he is deemed acquitted of the same crime, notwithstanding a defect in form or substance in the indictment on which he was acquitted." *Id*. § 1373. Section 1315 of the same code stated: "No indictment is insufficient, nor can the trial, judgment, or other proceedings thereon be affected by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits." When the drafters chose to allow amendments to indictments determined to be "defective in form" in Article VII (Original), section 18, they used a phrase that the statutes pertaining to indictments had contained since 1864. *See Code of Criminal Procedure*, ch VIII, § 81, p 455 (1864), *codified in* General Laws of Oregon, Crim Code, ch VIII, § 81, p 351 (Deady & Lane 1843-1872) (providing that an indictment is not insufficient "by reason of a

defect or imperfection in matter of form"). Those statutory references support our conclusion that the term "form" as used in Article VII (Amended), section 5(6), is a legal term of art.

We give legal terms of art their established legal meanings. *See, e.g.*, *DCBS v. Muliro*, 359 Or 736, 746, 380 P3d 270 (2016) (noting rule in the context of statutory interpretation). Contemporary legal dictionaries from the period demonstrate that, in 1908, a defect "in form" in an indictment had a legal meaning that stood in contrast to a defect in substance.

The 1897 edition of *Bouvier's Law Dictionary* defines a "defect" as "[t]he want of something required by law." John Bouvier, 1 *Bouvier's Law Dictionary* 528 (1897). Under the definition of "form," *Bouvier's* explains that "[f]orm is usually put in contradistinction to substance." *Bouvier's* at 831. Thus, the "difference between matter of form and matter of substance * * * is that if the *matter* pleaded be in itself insufficient, without reference to the manner of pleading it, the defect is substantial; but that if the fault is in the manner of alleging it, the defect is formal[.]" *Id*. (emphasis in original).[8]

*Bouvier's* goes on to provide examples of the difference between substance and form: Omission from a pleading of "the performance of a condition precedent, when such condition exists," for example, would be a defect of substance. *Bouvier's* at 831. However, *"duplicity* [and other examples] *are only faults in form*[.]" *Id*. (emphasis added). That example of duplicity as a defect in form is particularly relevant in this case. Defining "duplicity" in the context of pleading, *Bouvier's* explained that it included the faulty "joinder of two

---

[8] Another legal dictionary from that era offers a similar distinction between form and substance. The entry for "form" provides:

"A distinction is often made between matters of form and matters of substance, particularly in the interpretation of statutes allowing amendment or waiver of formal defects in pleadings and other proceedings. With respect to pleadings, the distinction is, that, where the matter pleaded is in itself insufficient, without reference to the manner of pleading it, the defect is substantial; but, where the fault is in the manner of pleading, the defect is merely formal[.]"

Benjamin Vaughan Abbott, 1 *Dictionary of Terms and Phrases Used in American or English Jurisprudence* 517 (1879).

or more distinct offences in one count of an indictment * * *." *Id.* at 626.[9] Thus, at the turn of the twentieth century, the exception in Article VII (Original), section 18, for amendments by a district attorney to address defects "in form" suggests that it encompassed indictments that improperly contained two offenses.

Oregon law also distinguished between indictments defective "in form" and "in substance." That dichotomy is consistent with this court's interpretation of Article VII (Original), section 18, in a case decided not long after its 1908 enactment. This court's interpretation of Article VII (Original), section 18, in *State v. Moyer*, 76 Or 396, 149 P 84 (1915), provides helpful context. *See Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 61, 11 P3d 228 (2000) (stating that contextual analysis includes relevant case law interpreting the constitutional amendment at issue); *Coultas v. City of Sutherlin*, 318 Or 584, 589-90, 871 P2d 465 (1994) (examining earlier case law construing initiated constitutional amendment in question).

In *Moyer*, this court stated that "amendment of the indictment in matters of substance is unauthorized" and noted "a well-recognized distinction between matters that are purely matters of form and matters that go to the substance of the indictment." 76 Or at 398-99. In analyzing Article VII (Original), section 18, the court discussed the difference between matters of substance and matters of form and explained that "formal matters" are "not essential to *the charge* and merely clerical errors, such as where the defendant cannot be misled to his prejudice by the amendment." 76 Or at 399 (emphasis added). The court also quoted treatises to explain the distinction. It concluded that "[m]atters that are necessary to be proved as alleged are material to the indictment," and it quoted volume 1 of the *Encyclopædia of Pleading and Practice* to support that proposition:

> "* * * the power of amendment extends to formal matters which are not essential to the charge, and mere clerical errors, etc., where the defendant cannot be misled or

---

[9] Thus, as used in this case, the term "duplicity" is a legal term of art that is unrelated to the term's current implication of "deception" and "bad faith." *Webster's Third New Int'l Dictionary* 703 (unabridged ed 2002).

prejudiced; but, on the other hand, any omission or mis-
statement which prevents an indictment or information
from showing on its face that *an offense has been commit-
ted, or from showing what offense is intended to charge*, is
a defect in matter of substance which cannot be cured by
amendment \*\*\*."

76 Or at 400 (emphasis added). Thus, *Moyer* distinguished
amendments of substance from those of form in terms of
whether the defect in an indictment concerned what is nec-
essary "to be proved as alleged" or to show that "an offense
has been committed." *Id*.

Over 75 years later, this court construed Article VII
(Amended), section 5(6), in *Wimber*, describing its decision
as one following the holding in *Moyer*. First, the court noted
that, although *Moyer* was decided in 1915, well before the
adoption of Article VII (Amended), section 5, in 1974, the
constitutional provision at issue there, Article VII (Original),
section 18, contained nearly identical wording. 315 Or at 113
n 19. The court in *Wimber* then explained that, "[c]onsis-
tent with the holding" in *Moyer*, its analysis would address
whether the court's amendment of the indictment to modify
allegations concerning the timing of the criminal conduct
was permissible under Article VII (Amended), section 5(6),
based on a multifactor test. *Id*. at 114-15.

That test was derived directly from statements in
*Moyer*, *compare Wimber*, 315 Or at 114-15, *with Moyer*, 76
Or at 399-400, and the constitutional purposes of an indict-
ment by grand jury. Those purposes are threefold and focus
on adequate identification of the charged offense:

"'(1) to inform the accused of the nature and character of
the criminal offense with which he is charged with suf-
ficient particularity to enable him to make his defense,
(2) to identify the offense so as to enable the accused to
avail himself of his conviction or acquittal thereof in the
event that he should be prosecuted further for the same
cause, and (3) to inform the court of the facts charged so
that it may determine whether or not they are sufficient to
support a conviction.'"

*Wimber*, 315 Or at 115 (quoting *State v. Smith*, 182 Or 497,
500-01, 188 P2d 998 (1948)).

Thus, in both *Moyer* and *Wimber*, this court previously addressed the meaning of Article VII (Original), section 18, and Article VII (Amended), section 5(6). The emphasis in both cases, as this court summed up in *Wimber*, was that "[a] matter that is essential to show that an offense has been committed is a matter of substance." 315 Or at 114.

And in *State v. Pachmayr*, 344 Or 482, 185 P3d 1103 (2008), this court more recently revisited the issue of what an indictment defective in "form" is for purposes of Article VII (Amended), section 5(6). After noting that section 5(6) was substantially similar to Article VII (Original), section 18, the court reviewed statutes in effect at the turn of the twentieth century and the definition of "form" in *Black's Law Dictionary. Pachmayr*, 344 Or at 488 (citing *Black's Law Dictionary* 510 (1st ed 1891). As a result, and as we conclude in this case, the court concluded that the term "form" was used in the same sense as in those contemporaneous statutes and that Article VII (Original), section 18,

"prohibited the district attorney from amending an indictment that was insufficient to charge the crime—an indictment that was defective in substance—in order to make it sufficient, but allowed the district attorney to correct other defects—defects in form."

*Pachmayr*, 344 Or at 488. The court noted that that understanding of indictments defective in form was consistent with *Moyer* and *Wimber. Id*. at 488-89. The court also quoted with approval the conclusion in *Wimber* that defects in matters of substance are those "essential to show that an offense has been committed." *Id*. at 489.

The court in *Pachmayr* went on to apply the *Wimber* test to determine whether the district attorney permissibly amended the indictment at the close of the state's case-in-chief. The indictment contained three counts of second-degree assault, which all specified that the defendant had used "an automobile" as his weapon. *Id*. at 484. In two of those counts, the allegation stated that the defendant had committed the crime by means of a "dangerous weapon"; in Count 2, instead of "dangerous weapon," the indictment said "deadly weapon." *Id*. The trial court permitted the state to change "deadly" to "dangerous" in Count 2, and the

defendant was convicted on all three second-degree assault charges. *Id.* at 485. This court concluded that the amendment (1) did not alter the indictment's essential nature; (2) did not prejudice the defendant's right to notice of the charges against him to protect against double jeopardy; and (3) did not prejudice the defendant by depriving him of a defense. *Id.* at 494. In so holding, the court emphasized that it was satisfied that "the grand jury, not the prosecutor, determined the charge to be brought and found the facts on which the charge was based," which maintained the grand jury's role. *Id.* at 495. Thus, *Pachmayr* is fully consistent with our conclusions about what it means for an indictment to be defective in form and when the test in *Wimber* should be used to analyze whether the district attorney could amend an indictment.

*Reinke* also sheds some light on our understanding of Article VII (Amended), section 5(6), because the court in *Reinke* construed another part of section 5 that was enacted by the people at the same time in 1974. The defendant in *Reinke*, who was convicted of second-degree kidnapping, contended that it was necessary for the grand jury to find and allege additional facts specified in ORS 161.725(1)(b) that would subject him to an enhanced sentence as a dangerous offender, because those were "elements" of the offense. *Reinke*, 354 Or at 100. This court considered "whether sentence enhancement facts are elements of an offense that, as a matter of state constitutional law, the grand jury must find and the indictment must allege." *Id.* at 101. The court explained the defendant's argument as follows:

> "Article VII (Amended), section 5, requires the state to proceed by an indictment or an information if it wishes to charge a 'crime punishable as a felony.' As we understand it, defendant's argument under that section turns on the proposition that the constitutional phrase 'a crime punishable as a felony' refers not only to the elements of the underlying crime but also to any fact that authorizes an enhanced sentence for that crime; that is, he views the word 'crime' as referring to both the elements of the offense and any sentence enhancement fact that the prosecutor invokes as a basis for seeking a greater sentence."

*Id.* at 106 (quoting Or Const, Art VII (Amended), § 5(3)).

This court noted that, in 1908, "the people voted to amend Article VII (Original), section 18, and made a grand jury indictment mandatory for both crimes and misdemeanors." *Reinke*, 354 Or at 108. The court then explained that a "crime" in that section and in Article VII (Amended), section 5, referred to prohibited acts that constituted an offense; thus, this court had held that Article VII (Amended), section 5 (1929), "required only that the grand jury determine that there is probable cause to find the elements of the 'conventional charge.'" *Reinke*, 354 Or at 109 (quoting *State v. Hicks*, 213 Or 619, 641, 325 P2d 794 (1958)). Importantly for purposes of this case, this court in *Reinke* understood that a "crime" for purposes of Article VII (Amended), section 5, does not differ "from the conventional crime that the legislature has defined." 354 Or at 113.

To summarize, that case law supports three propositions: First, a well-recognized dichotomy of long standing in Oregon law between indictments defective in substance and in form illuminates the meaning of the phrase "defective in form." Second, defects in indictments as to matters that are essential to show that a crime has been committed are defects in substance; those that are not essential to show that a crime has been committed are defects "in form." And, third, to show that a crime has been committed, it is essential for a grand jury indictment to include the facts supporting the elements of the crime, that is, "the conventional crime that the legislature has defined."[10] *Reinke*, 354 Or at 113.

We disagree with the dissent's view that our recent decision in *Warren*, read in combination with *Moyer*, leads to the conclusion that the amendment in this case is an allegation of substance that required the grand jury to issue a new indictment. Quoting *Moyer*, 76 Or at 400, the dissent states

---

[10] The dissent suggests that the grand jury must make other factual determinations beyond the facts supporting the elements of the crime and that those factual determinations are also essential to show that a crime has been committed. The dissent proffers examples, such as the location of the crime, a fact that establishes that venue is proper, and the date of the crime, a fact needed to establish that the prosecution was commenced within the limitation period permitted for the crime. *See* 366 Or at 441 (Duncan, J., dissenting). We express no opinion on that view.

that a matter is substantive for purposes of Article VII, section 5(6) if it "must be proved as alleged." 366 Or at 430-31 (Duncan, J., dissenting). And, because we held in *Warren*, 364 Or at 122, that an indictment must allege the basis for joining charges, the dissent argues that the amendment in this case—the statutory basis for joining the charges—was an amendment of substance. 366 Or at 449 (Duncan, J., dissenting).

At its heart, the dissent's view is inconsistent with *Moyer* (and *Wimber* and *Pachmayr*). The statutory basis for joinder added to an indictment is not a matter that is essential to the charge—that is, a substantive change—because it is not necessary to show that an offense has been committed. Though this court held in *Warren* that a multi-count indictment must contain the basis for joinder to properly bring multiple counts in one indictment, *Warren* was a case about whether Oregon's joinder statute required the basis for joinder of multiple charges to be in an indictment—not whether, for purposes of Article VII, section 5(6), the statutory basis for joinder is "essential to the charge," *Moyer*, 76 Or at 399, that is, essential to show that a crime has been committed.

There is a difference between components that must be included in an indictment because of statutory requirements and components that must be included for constitutionally based reasons. That difference undermines the logic of the dissent's reliance on *Warren* for what the Oregon Constitution requires in Article VII (Amended), section 5(6).

If the dissent were correct that the statutes concerning requirements for indictments control what this court must understand as matters of form or substance in an indictment for purposes of Article VII (Amended), section 5(6), then everything (or substantially everything) listed in ORS 132.550 would be essential to be set out in a grand jury indictment such that a subsequent amendment to fix any failure would be an amendment of substance.[11] But we need look no further than *Wimber* for a counter-example. By statute, an indictment requires "a statement in

_____

[11]  ORS 132.550 provides that an indictment must contain "substantially" the elements that it lists.

each count that the offense charged therein was committed on, or on or about, a designated date, or during a designated period of time." ORS 132.550(6). However, as this court held in *Wimber*, time is not a material element of most offenses, so an amendment shortening the time range in the indictment to comply with the statute of limitations is a permissible amendment. 315 Or at 110, 115. The court explained in *Wimber* that "the constitutional purposes of requiring an indictment by grand jury" were met because "[n]o new or different theory, element, or crime" was added. *Id.* at 115. *See also State v. Long*, 320 Or 361, 366, 368-69, 885 P2d 696 (1994) (time not a material element; thus, trial court could correct error in indictment and instruct jury on the end date for the timeframe during which the crime allegedly occurred, even though the end date in the indictment was before the date of the incident).

Rather, the text and context of Article VII (Amended), section 5(6), point to the following essential distinction: If the failure of the indictment to include an allegation on the statutory basis for joinder of multiple crimes is a matter that is essential to show that a crime has been committed, then the defect is one of substance that cannot be remedied by the district attorney. But if the statutory basis for joinder of multiple crimes in the indictment is not essential to show that a crime has been committed, then a failure to include it presents a defect in form that can be corrected by the district attorney's amendment. The history of the provision in both Article VII (Original), section 18, and Article VII (Amended), section 5(6), supports the latter reading.

4.  *Historical analysis*

Under our constitutional jurisprudence, the historical analysis of an amended constitutional provision examines "sources of information that were available to the voters at the time the measure was adopted and that disclose the public's understanding of the measure." *Ecumenical Ministries*, 318 Or at 560 n 8. Examples of relevant sources include "materials that are included in the Voters' Pamphlet, such as the ballot title, the explanatory statement, and the legislative argument in support." *Shilo Inn v. Multnomah*

*County*, 333 Or 101, 130, 36 P3d 954 (2001), *adh'd to as modified on recons*, 334 Or 11, 45 P3d 107 (2002).

We first examine the 1908 amendment of Article VII (Original), section 18, which arose after legislative changes permitted district attorneys to charge crimes by information rather than by grand jury indictment. In 1899, the legislature acted pursuant to Article VII (Original), section 18, to authorize criminal prosecutions based on the filing of a district attorney's information. Or Laws 1899, §§ 1-3, p 99. The legislature also authorized the district attorney to file an information to correct any defect in an indictment. Or Laws 1899, § 6, p 100. In the period between 1899 and 1908, it appears that district attorneys charged even the most serious felonies by information. *See, e.g.*, *State v. Blodgett*, 50 Or 329, 331, 92 P 820 (1907) ("The defendant by information of the district attorney was charged with the crime of murder in the first degree[.]").

The 1908 Voters' Pamphlet reflects that the referral of the constitutional amendment that first introduced the phrase at issue in this case was a response to the wide-ranging powers that district attorneys had been granted. The sole argument related to the proposed amendment was submitted by 11 individuals, including Charles H. Carey and Ben Selling. Official Voters' Pamphlet, General Election, June 1, 1908 (1908 Voters' Pamphlet), 116. That argument, in favor of the amendment, was a resounding call to voters to control the unchecked powers of district attorneys to charge crimes. It began:

> "Under the present law, any district attorney can file an information against a man for any crime, from murder down. The accused is not entitled of right to any preliminary hearing and the first he knows of the matter may be his arrest. He may never be tried at all, the information or indictment may be dismissed, and yet his record is blackened. It may be that it is not intended from the start that he ever should be tried, but the information is issued to serve some political purpose, private revenge or the scheme of a ring hostile to the victim. It is un-American. It is too much like the despotism of Russia and it is too much power to be vested in the hands of any one man. The whole history of Anglo-Saxon institutions is a battle against this very

thing: the power of one man to brand another with crime and lodge him in prison."

1908 Voters' Pamphlet at 116.

The 1908 Voters' Pamphlet leads with the question that was printed on the official ballot. It states:

> "For constitutional amendment providing for the choosing of jurors and grand jurors, and that no person can be charged in the Circuit Courts with the commission of a crime or misdemeanor except upon indictment found by a grand jury, *except when a court holds an indictment to be defective, the District Attorney may file an amended indictment.*"

*Id.* at 114 (emphasis added). Notably, that question posed to voters mentioned that amending an indictment would be possible, but it does not include the pivotal words "in form" after the word defective. That omission is consonant with the primary focus of the amendment: to enshrine in the constitution the role of grand juries in finding a factual basis for charging crimes to prevent the dangers of the "present arbitrary power lodged in one man." *Id.* at 117.

The voters approved the 1908 amendment. That amendment withdrew the legislature's authority to abolish grand juries, re-established that a criminal prosecution may only commence upon grand jury indictment, and limited the extent of a district attorney's ability to amend indictments to matters of form. Or Const, Art VII (Original), § 18 (1908); *see* Or Laws 1909, p 12.

As earlier noted, voters in 1974 approved virtually identical language concerning the district attorney's ability to amend an indictment. Measure 3 was the legislative referral to voters of the proposed constitutional amendment to Article VII (Amended), section 5. The ballot title in the 1974 Voters' Pamphlet read as follows:

> "**REVISES CONSTITUTIONAL REQUIREMENTS FOR GRAND JURIES**—Purpose: This measure amends Oregon Constitution to provide that a grand jury indictment is not necessary for a felony prosecution if a person has been charged and a magistrate finds at a preliminary

hearing that there is probable cause to believe that the person in fact committed a felony. The amendment does not eliminate a citizen's right to jury trial, but only deals with the method by which a person is charged with a crime."

Official Voters' Pamphlet, General Election, Nov 5, 1974 (1974 Voters' Pamphlet), 16.

Voters were told that the proposed amendment gave the district attorney three charging options in felony cases and allowed the district attorney to proceed by information for all misdemeanors. In felony cases, the district attorney could (1) seek a grand jury indictment, (2) proceed without an indictment if the person charged with a felony had a preliminary hearing before a magistrate that established that there was probable cause to believe a felony had been committed, or (3) proceed by information if the person waived the preliminary hearing. 1974 Voters' Pamphlet at 13. The explanation of the amendment stated that the purpose of the restrictions on the district attorney's charging options was to "make certain *** that some disinterested judicial officer (the magistrate) has determined that probable cause exists[.]" *Id*. The same statement assured voters that the "proposal will substantially streamline the section but would make no substantive changes other than those described above." *Id.*

Voters also were presented with arguments for and against the amendment. The argument in favor stated that the proposal would "promote efficiency and fairness" in the criminal justice system by "speed[ing] up the system where necessary and yet retain[ing] the grand jury for use in questionable cases and in its traditional role of investigating crime." *Id.* at 14. That argument points to the time-consuming process in Multnomah County of taking nearly 200 cases per month to the grand jury. *Id.* The argument in opposition responded that the proposal was a "half-way measure [that] should be rejected to await full reform," which it identified as completely abolishing the grand jury. *Id.* at 15. Nothing in those materials indicates that the continuing distinction between allowing amendments by a district attorney as to matters of form, but not on matters of substance, was highlighted for, or was of significance to, voters in 1974.

From the explanation of the amendment and arguments both in favor and in opposition to the proposal, voters in 1974 would have understood that the primary goal of the proposed amendment was to facilitate moving cases through the criminal justice system, but with appropriate checks on the district attorney's charging decisions. Given the ballot title, which advised voters that the amendment (1) made a grand jury indictment unnecessary for a felony prosecution if "a magistrate finds at a preliminary hearing that there is probable cause to believe that the person in fact committed a felony" and (2) "deals with the method by which a person is charged with a crime," voters were assured that even with allowing alternatives to the grand jury system of charging individuals, a neutral party—a magistrate during a preliminary hearing—ensured protection for individuals being charged with a crime. *Id.* at 16.

That history of the 1908 and 1974 amendments supports the conclusion that voters approved of a neutral party reviewing the factual basis for charging serious crimes, instead of vesting all discretion for those charging decisions in the district attorney. That history is consistent with our analysis of the text and context of Article VII (Amended), section 5(6), which indicates that matters essential to show that a crime has been committed are matters of substance committed to the grand jury's review.[12]

But defendant focuses on the 1908 history and urges a different conclusion: In light of pre-1908 caselaw, at a time when Oregon law required single-count indictments, the voters in 1908 who authorized a district attorney to file an amended indictment when it is "defective in form" would have understood that allegations required to charge more than one offense in a single indictment were matters of "substance."

---

[12] The dissent characterizes the purpose of the 1908 amendment in broad terms: "to protect the role of grand juries in the initiation of criminal prosecutions and to limit the role of district attorneys." 366 Or at 440 (Duncan, J., dissenting). But couching the purpose of the amendment at that level of generality moves too far away from what voters were told about the amendment and its historical context—the preceding legislative changes permitting district attorneys to charge even serious felonies without grand juries—for us to accept the dissent's extrapolation from it.

Defendant bases his conclusion on cases from that era that, he argues, considered a demurrer on the basis of duplicity—charging multiple crimes—to be an error in substance. *See State v. Clark*, 46 Or 140, 80 P 101 (1905); *State v. Hinkle*, 33 Or 93, 54 P 155 (1898); *State of Oregon v. Carr*, 6 Or 133 (1876). Building on that reading of *Clark*, *Hinkle*, and *Carr*, defendant argues that voters in 1908 would not have viewed a failure to include joinder allegations as a simple defect "in form" as provided in Article VII (Original), section 18. The state responds that those cases are consistent with the proposition that the Oregon Constitution assigns to the grand jury the responsibility to find and allege facts constituting the crime charged but provide no support for defendant's argument that the grand jury is charged to find and allege a statutory ground for joinder of multiple crimes in one indictment. We agree with the state.

Two of the cases, *Clark* and *Carr*, illustrate the undisputed proposition that indictments at the time were required to charge but one crime and were subject to demurrer for failure to comply with that requirement, but the decisions do not characterize such a failure as either a defect in substance or in form. Both involved one-count indictments. In *Clark*, the defendants were convicted of larceny after unsuccessfully challenging the indictment on the ground that more than one crime was charged. 46 Or at 141. This court concluded that the indictment alleged a single crime, because it alleged that the defendants had stolen horses belonging to two victims at the same time and place. *Id.* at 142. In *Carr*, the defendant successfully challenged an indictment in the trial court, and the state appealed. This court held that the indictment, which alleged that the defendant had committed a gambling crime by various means (dealing, playing, and carrying on a game of faro for money), stated only one offense and that the trial court had erred in sustaining the defendant's demurrer. *Carr*, 6 Or at 134-35. This court reversed and remanded the case to the trial court. *Id.* at 137.

Unlike in *Clark* and *Carr*, this court in *Hinkle* concluded that the indictment was defective by charging more than one crime. 33 Or at 96-97. But, as in *Clark* and *Carr*, the decision in *Hinkle* did not address the dichotomy of defects

in substance and in form in indictments. The court reversed the judgment of conviction because the indictment charged two offenses and because the trial court committed reversible error in an evidentiary ruling. *Id.* at 98. In his opening brief, defendant draws from the disposition in *Hinkle* the conclusion that this court "considered such a defect *not* a mere matter of form." (Emphasis in original.) Without further elaboration from defendant, we understand his contention to be that, because an indictment that is found defective on the ground of duplicity would lead to a consequential disposition on appeal, reversal of the judgment of conviction, this court must have viewed the defect as one of substance rather than form. On at least two fronts, defendant's position faces difficulties.

First, there is equivocation. Defendant appears to equate a defect "in substance" with one that results in a serious or consequential disposition. That is, a defect in substance is a substantial or significant defect (and, thus, concomitantly, a defect "in form" is one that results in a minor consequence). In other contexts, one involving ordinary parlance, for example, a problem of substance may be understood as one of substantial or significant import. But that is not the proper understanding in this context, which involves the text of a constitutional provision—"defective in form"— that is a legal term of art. Applying our interpretive precedents, we have already noted that, voters in 1908 would have understood that an indictment "defective in form" in Article VII (Original), section 18, refers to one that is defective as to matters that are not essential to show that a crime has been committed.

Second, defendant's suggestion that a multicount indictment is substantively defective because of the seriousness of such an error also is undercut by the fact that a defendant could waive an objection to the indictment on the ground of duplicity by failing to properly raise it.[13] In 1908, the demurrer statute provided that

---

[13] Defendant briefly acknowledges that, in 1908, demurring to an indictment on the ground that it alleged multiple crimes was a waivable objection but asserts that "[h]olding that an objection has been waived *** is much different than relegating the defect to be one of mere form."

"[t]he defendant may demur to the indictment when it appears upon the face thereof either,—

"1.    That the grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable within the county;

"2.    That it does not substantially conform to the requirements of chapter VIII of title XVIII of this code;

"3.    *That more than one crime is charged in the indictment;*

"4.    That the facts stated do not constitute a crime;

"5.    That the indictment contains any matter which, if true, would constitute a legal justification or excuse of the crime charged, or other legal bar to the action."

The Codes and Statutes of Oregon, title XVIII, ch IX, § 1357 (Bellinger & Cotton 1901) (emphasis added). The bases for demurrer under section 1357 were divided into two categories. A defendant could attack an indictment under subsections 1 and 4—the grand jury lacked authority to act or the facts alleged did not constitute a crime—at any point during the proceedings. *State of Oregon v. Bruce*, 5 Or 68, 71 (1873). But the other bases were waivable: A defendant could challenge an indictment under subsections 2, 3, and 5—including on the basis that more than one crime was charged—only through a demurrer, and if he or she failed to do so, that basis was waived. *State v. Jarvis*, 18 Or 360, 362, 23 P 251 (1890); *Bruce*, 5 Or at 71. Thus, a conviction could withstand appeal, even if the indictment had charged multiple crimes, if the defendant failed to timely demur on the ground of duplicity. *See, e.g.*, *State v. Lee*, 33 Or 506, 56 P 415 (1899).[14]

---

[14] In *Lee*, the state alleged in the indictment that the defendant had forcibly engaged in sexual intercourse with the victim and also alleged the elements of statutory rape, including that the defendant was over 16 years old and the victim was a child under 16 years old. 33 Or at 507. The defendant failed to demur before trial and was convicted. *Id*. at 507, 510. The defendant then appealed his conviction by arguing that the indictment charged only statutory rape, which the state had failed to prove, and that the allegation of forcible sexual intercourse was merely a legal conclusion related to the statutory rape offense. *Id*. at 507-08. The state argued that the indictment was duplicitous, that the state "had the right to adopt either theory of the case," and that it had elected to proceed upon the common-law, forcible rape charge at trial. *Id*. at 508. This court concluded that the indictment had charged both common-law rape and statutory rape. *Id*. at 510.

The dissent uses *Clark* and *Carr* for a different purpose. The dissent contends that those cases illustrate that, in 1908, an indictment had to include factual allegations demonstrating the proper connection between the defendant's multiple acts so that those acts could be joined in a single indictment. *See* 366 Or at 445, 446 (Duncan, J., dissenting). The dissent further concludes that the voters in 1908 would have viewed a failure to include an allegation of the statutory basis for joinder as a defect in substance rather than "in form," because case law indicated that the grand jury was responsible for determining the number of acts that could be charged in a single indictment. 366 Or at 447 (Duncan, J., dissenting).

The dissent correctly points out that, in those cases, this court looked to the indictment for the acts the defendant was accused of committing. But the court's examination in those cases illustrates that whether multiple crimes were alleged and joined in an indictment—lawfully or unlawfully— was a question of law. The legal question depended in part on the historical facts as alleged in the grand jury's indictment, but this court was evaluating whether the allegations should be understood to charge more than one crime as a legal matter. Although the grand jury found probable cause as to historical facts, it is difficult to move from that to the conclusion that a voter in 1908 would have understood that the grand jury had to allege the statutory or legal basis for joining multiple counts in one indictment, when such joinder was prohibited at the time.[15]

## III.  CONCLUSION

In sum, considering the text, context, and historical analysis together, we reject defendant's contention that the omission of statutory bases for joinder of multiple crimes

Implicitly accepting the state's argument, the court also held that, because the defendant had waived a duplicity objection, the allegations supporting statutory rape—the ages of the defendant and the victim—could be stricken from the indictment "as surplusage, without affecting the conviction." *Id.* Given the sufficiency of the evidence of common-law rape, this court affirmed the judgment. *Id.* at 512.

[15] Twenty-five years later, in 1933, the legislature passed House Bill 277, which allowed for multicount indictments when several charges arose from the same act or transaction. Or Laws 1933, ch 40, § 1.

categorically requires the district attorney to resubmit the case to a grand jury. In this case, the district attorney added only statutory bases for joinder of multiple crimes, which were consistent with the allegations of facts in the original indictment, not additional historical facts essential to show that a crime had been committed. Accordingly, the defect in the indictment was one of form, and the trial court correctly permitted the district attorney to amend the indictment. We also affirm the decision of the Court of Appeals, albeit based on different reasoning.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**DUNCAN, J.,** dissenting.

At the outset it is important to identify the points on which the majority and the dissent agree. First, we agree that the grand jury plays an important protective role in criminal cases. Second, we agree that the grand jury is responsible for making all findings of historical fact regarding the conduct upon which a charge is based. That is, the grand jury is responsible for determining, among other things, what act or omission the defendant committed that justifies each charge in an indictment. Third, and relatedly, we agree that the district attorney cannot amend an indictment to add any allegations of historical fact.

In this case, the grand jury indicted defendant for multiple crimes but did not allege any bases for joining the charges. Over defendant's objection, the trial court granted the district attorney's motion to amend the indictment to include joinder allegations. The majority affirms the trial court's ruling because, in its view, the amendment did not add any allegations of historical fact to the indictment. I disagree because I conclude that the joinder allegations added by the district attorney are allegations of historical fact. I write separately to explain why, if a grand jury charges a defendant with multiple crimes in a single indictment, it must find and allege facts that justify the joinder of the charges, and, if it does not, the indictment is defective in substance and cannot be corrected by an amendment by the district attorney.

As I will explain, this case presents a constitutional question. Article VII (Amended), section 5(6), of the Oregon Constitution provides that a district attorney may amend an indictment only to correct a defect "in form." A district attorney may not amend an indictment to correct a defect in substance. *State v. Moyer*, 76 Or 396, 399, 149 P 84 (1915). When determining whether an indictment was defective in substance when it was issued, this court considers whether the indictment was sufficient to serve its constitutional purposes. *State v. Wimber*, 315 Or 103, 114-15, 843 P2d 424 (1992); *State v. Pachmayr*, 344 Or 482, 490-93, 185 P3d 1103 (2008). One of the constitutional purposes of an indictment is to ensure that the defendant is tried based on the facts found by the grand jury. *Moyer*, 76 Or at 401; *Pachmayr*, 344 Or at 495. Another is to provide the defendant with notice of the nature and character of the crime charged with sufficient particularity so that the defendant can prepare and present an informed response. *Wimber*, 315 Or at 115; *Pachmayr*, 344 Or at 490. In this case, the indictment, as issued by the grand jury, was not sufficient to serve either of those purposes.

Because the indictment did not allege the basis for joinder, it was unclear whether the charges were based on the same act, different acts during a single incident, or different acts during multiple incidents. Simply put, it was unclear what acts the grand jury had based the charges on. As a result, the indictment was too ambiguous to ensure that the act that the grand jury had relied on when authorizing each charge would be the same act that the district attorney would rely on when seeking a conviction on that charge. It also was too ambiguous to provide defendant with adequate notice of what acts he was being prosecuted for committing.

That the indictment was too ambiguous to serve its constitutional purposes is illustrated by the fact that even the district attorney could not tell what acts the grand jury had based the charges on. Before trial, the district attorney asserted that the charges were based on acts committed during two incidents, but at trial he asserted that they were based on acts committed during a single incident. The district attorney's

changing positions show that, as a result of the failure to allege the basis for joinder, the indictment was too ambiguous to bind the state to the facts found by the grand jury and too ambiguous to provide adequate notice to defendant.

The ambiguity was a substantive defect and, as such, it could not be fixed by a district attorney's amendment. That conclusion makes sense because allowing the district attorney to determine, for example, whether two charges were based on the same act or different acts would put the district attorney in the position of determining which act or acts the charges were based on, thereby supplanting the grand jury's fact findings about the acts underlying the charges.

The conclusion that the grand jury must find and allege facts sufficient to support the joinder of charges is also supported by the legislative history of Article VII (Amended), section 5(6). The constitutional limit on a district attorney's authority to amend an indictment, which is now in Article VII (Amended), section 5(6), dates back to 1908 and was intended to protect the role of the grand jury. Consequently, it is helpful to understand what the grand jury's role was at that time. On that point, the then-existing statutes and case law are instructive. They establish that, contrary to the state's argument in this case, the grand jury's role was not limited to finding facts relating to the elements of the charged crime. Of importance to this case, the grand jury's role included finding facts relating to the number of crimes that could be charged in a single indictment. Again, that makes sense. Whether charges can be joined depends on the relationship between the acts on which the charges are based. Because the grand jury is the entity that determines what acts a defendant committed, the grand jury is in the best position—and perhaps the exclusive position—to determine whether the acts underlying multiple charges are related in a way that justifies joinder.

## I.   FACTS

In order to understand the effects of the failure to allege the basis for joinder in this case, it is necessary to describe the procedural history of the case in some detail. As mentioned, a grand jury indicted defendant for multiple

crimes. The indictment is the only record of the grand jury's factual findings. Grand juries meet in private, ORS 132.310, and, although a district attorney can be present for the presentation of evidence to a grand jury, no one, not even a district attorney, can be present for a grand jury's deliberations and voting, ORS 132.090(4).

The indictment charged defendant with seven counts: two counts of first-degree robbery (one with a deadly weapon, Count 1, and one with a dangerous weapon, Count 2); two counts of unlawful use of a weapon (one with a knife, Count 3, and one with a gun, Count 4); two counts of first-degree burglary (one with the intent to commit theft, Count 5, and one with the intent to commit menacing, Count 6); and one count of felon in possession of a firearm (Count 7). Each count alleged the same crime commission date. The robbery counts specified the same victim, RM, and the burglary counts specified the same apartment address. It was not clear from the indictment whether the seven counts were based on a single incident or separate incidents. If the counts were based on separate incidents, it was not clear which counts were based on which incident. In addition, for two of the pairs of counts (the robbery pair and the burglary pair) it was not clear whether each count in the pair was based on the same act or separate acts.

As a general rule, an indictment "must charge but one offense, and in one form only." ORS 132.560(1). But, there are exceptions to that general rule. An indictment may charge more than one offense if the offenses are "[o]f the same or similar character," "[b]ased on the same act or transaction," or "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." ORS 132.560(1)(b)(A)-(C).

After the grand jury issued the indictment in this case, the Court of Appeals decided *State v. Poston*, 277 Or App 137, 144-45, 370 P3d 904 (2016), *adh'd to on recons*, 285 Or App 750, 399 P3d 488, *rev den*, 361 Or 886 (2017), in which it held that, if an indictment charges a defendant with multiple crimes, it must allege the basis for joining the charges. Because the indictment in this case did not comply with that requirement, the district attorney filed a motion

to amend the indictment to include bases for joining the charges.

As mentioned, under Article VII (Amended), section 5(6), a district attorney may amend an indictment only to correct a defect "in form." *Pachmayr*, 344 Or at 486. A district attorney may not amend an indictment to correct a defect "in substance." *Moyer*, 76 Or at 398 (holding that amendments as to matters "of substance" are "unauthorized").

In his motion to amend, the district attorney asserted that the failure to allege the basis for joining the charges was a defect in form. He proposed that the indictment be amended to add the following paragraph to each count:

> "This count constitutes part of a common scheme or plan based on two or more acts or transactions with the other counts of this indictment. This count is of the same or similar character as the conduct alleged in the other counts of this indictment. This count is connected together by two or more acts or transactions with the other counts of this indictment."

Thus, the district attorney sought to amend the indictment to allege two of the three statutory bases for joinder for each count. Specifically, he sought to amend the indictment to allege that the counts were "based on two or more acts or transactions" that were "connected together" and "part of a common scheme or plan," ORS 132.560(1)(b)(C), and that they were "of the same and similar character," ORS 132.560(1)(b)(A). The proposed amendment did not allege that the counts were "based on the same act or transaction." ORS 132.560(1)(b)(B).

The district attorney argued that the amendment was not substantive because it did not "alter the elements of the charged crimes." He asserted that, "for purposes of Article VII (Amended), section 5, any part of the indictment other than an element of a charged crime is non-substantive."

Defendant objected to the proposed amendment, arguing that the failure to allege the basis for joinder was a defect in substance. He also argued that allowing the amendment would prejudice him because, among other things, it would affect what evidence the state could offer

against him. As an example, he pointed out that it would enable the state to offer evidence to support the allegation in the proposed amendment that the crimes were part of a common scheme or plan.

The trial court held a hearing on the state's motion, during which the district attorney stated that the crimes charged in the indictment were based on two incidents that occurred on the same day, one in which defendant entered an apartment with a gun and took a tablet computer and a later one in which defendant entered the same apartment and took a knife:

> "*Your Honor, we have a series of acts that occurred on a single day.* [Defendant] came to a particular residence where our victim used to live with an acquaintance of [defendant's] who had just moved out.
>
> "He had a firearm with him and there was some discussion at the door with the victim about letting him come in, letting [defendant] come into the apartment. The victim ultimately was unable to keep [defendant] out.
>
> "Upon entry into the apartment *** [defendant] showed the victim that he had a loaded firearm and took several things from the apartment, to include a tablet computer or an iPad-type of device from one of the bedrooms.
>
> "He then wound up leaving. Then later in the afternoon came back and again was seen by the victim. He came back into the apartment. On that second return, he took a knife out of the kitchen, I recall. So there's a second incident there.
>
> "* * * * *
>
> "We have two acts or transactions that occur throughout the course of the day. And I would argue *that there's sort of a common scheme or plan throughout the course of this to not only show up at the apartment, but to do so with a firearm, to take the property, and then to come back and do so again.*"

(Emphases added.)

Defendant argued against the amendment, asserting that the grand jury had to find the facts to justify joinder of the charges.

Observing that one consideration relevant to whether an amendment is substantive is whether it affects the evidence that may be admitted at trial, the trial court asked defendant whether, if some counts were tried separately from others, the evidence would be the same in each trial. Defendant answered that, in a trial based on one incident, evidence of the other incident would not necessarily be admissible.

At the close of the hearing, the trial court granted defendant leave to file a demurrer and asked the state to file a "factual summary." The parties submitted those filings. The state's factual summary was a written statement by the district attorney. It was similar to the oral statement that the district attorney had made to the court during the motion hearing in that it reported that defendant had entered RM's apartment twice, the first time around 9:30 a.m. and the second time around 4:00 p.m. But it differed from the oral statement in that it did not mention a knife at all. Instead, it reported that defendant had pulled out a gun in front of RM during the second incident.[1]

After receiving the parties' post-hearing filings, the trial court issued an order granting the state's motion to amend and, thereby, implicitly disallowed defendant's demurrer. The case proceeded to a jury trial in front of a different judge than the one who had heard and ruled on the motion to amend.

At trial, the state changed its position regarding when the crimes occurred. Instead of asserting that the crimes occurred during two different incidents, as it had before trial, it asserted that all the crimes occurred during one incident. In keeping with that position, RM testified

---

[1] In the factual summary, the district attorney stated that a police officer had spoken to RM on the date at issue. RM told the officer that defendant had come to his apartment around 9:30 a.m. and RM had let him in. RM then called his roommate, YR, who said that she wanted defendant to leave. RM asked defendant to leave, but defendant refused. Defendant pulled out a gun in front of RM and told RM that he would kill him. Defendant went into YR's room and took a tablet computer. RM demanded the tablet back, but defendant denied having it and left. Later that day, around 4:00 p.m., RM came home to find defendant in the apartment. Defendant again pulled out a gun in front of RM but left when RM called 9-1-1.

that, on the morning of the day at issue, defendant pushed his way into the apartment, threatened him with a gun, and took property, including a knife, which he used to threaten RM before leaving the apartment.[2]

Although the state's trial position was that defendant had committed all the charged crimes during his first entry into the apartment, the state presented evidence about defendant's second entry, including that defendant refused to leave the apartment that afternoon until RM threatened to call the police.

The jury did not accept all of RM's testimony. It found defendant not guilty of both counts of first-degree robbery (one with a deadly weapon, Count 1, and one with a dangerous weapon, Count 2), one count of unlawful use of a weapon (a knife, Count 3), and one count of first-degree burglary (with the intent to commit theft, Count 5). It found him guilty of one count each of unlawful use of a weapon (a gun, Count 4), first-degree burglary (with the intent to commit menacing, Count 6), and felon in possession of a firearm (Count 7).

Defendant appealed, arguing that the trial court had erred in allowing the state to amend the indictment. The Court of Appeals affirmed. It did so before this court decided *State v. Warren*, 364 Or 105, 127, 430 P3d 1036 (2018), in which we held, as the Court of Appeals had in *Poston*, that an indictment must allege the basis for joinder. In *Warren*, we explained that, "for more than one hundred years, Oregon law has limited the number of offenses that can be charged in a single charging instrument and has required that charging instruments *allege facts* sufficient to demonstrate compliance with those limits." 364 Or at 114 (emphasis added). Notably, we described the required allegations as factual allegations. The issue in this case is whether the failure to allege those facts in this case was a defect in form, which could be corrected by the district attorney. For the reasons that follow, I conclude that it was not.

_____

[2] In its description of the case, the majority describes the state's trial theory. But that was not the state's only theory, and it was not the theory it presented to the trial court when arguing in support of its motion to amend the indictment, which was that defendant committed the crimes during two incidents.

## II.  ANALYSIS

I base my conclusion on two analyses: (1) an analysis of this court's cases involving the constitutional limitation on a district attorney's authority to amend an indictment and (2) a historical analysis of the limitation. I begin with the case law.

### A.  *Case Law Analysis*

This court has previously interpreted the constitutional limitation on a district attorney's authority to amend a grand jury indictment, and its cases doing so—including *Moyer*, *Wimber*, and *Pachmayr*—are instructive. As explained below, they establish that, when the state proceeds against a defendant on an indictment, it is the grand jury's role to determine the facts underlying the charges. Relatedly, they also establish that a defendant has a right to be tried based on the facts found by the grand jury. A district attorney cannot amend an indictment based on what the district attorney thinks the grand jury found or would have found.

*Moyer* makes that clear. In *Moyer*, a grand jury indicted the defendant for arson, which, as relevant here, was defined by statute as the willful and malicious burning of the property of another. The indictment alleged that the defendant "did *** wrongfully, unlawfully, feloniously, willfully and maliciously *** set fire to and burn a stable, to wit, the Jordan Valley Livery Stable." 76 Or at 396. The defendant demurred to the indictment, asserting that it was insufficient because it did not allege that the stable was the property of another. The trial court agreed and sustained the demurrer. But the court allowed the district attorney to amend the indictment to allege that the stable was the property of another. The defendant was convicted and appealed. On appeal, this court held that the amendment violated the constitutional limitation on amendments by a district attorney. *Id*. at 401. It stated that a defendant "is entitled to be tried upon an indictment found by a grand jury who act under oath," *id*. at 398, and that a district attorney "cannot amend [an indictment] as to charge the crime which it is supposed [the grand jury] intended," *id*. at 401 (internal quotation marks omitted). As the facts of *Moyer* illustrate,

that is true regardless of how likely it is that the grand jury found, or would have found, the fact at issue.

In its subsequent cases involving amendments to indictments, this court has continued to focus on whether the indictment, as issued by the grand jury, reflected that the grand jury found the facts upon which the defendant was tried. In *Wimber*, this court held that an amendment was permissible because, among other things, it did not "alter the availability *** of defenses or evidence, or add new or different theory, element, or crime." 315 Or at 114. "To the contrary, the indictment returned by the grand jury was narrowed." *Id*. at 115.

Similarly, in *Pachmayr*, this court approved an amendment that deleted surplusage from an indictment. 344 Or at 495. This court explained that it was not making assumptions "about what the grand jury 'actually' intended to charge[.]" *Id*. Instead, it was relying on the original indictment, which, it concluded, "contained the allegations necessary to charge" the defendant with the crime for which he was tried. *Id*. Accordingly, this court stated that it was "satisfied that *** the grand jury, not the prosecutor, determined the charge to be brought and found the facts on which the charge was based." *Id*.; *see also State v. Long*, 320 Or 361, 370, 885 P2d 696 (1994) (holding that a trial court's correction of a typographical error did not enable the state to try the defendant on facts other than those found by the grand jury).

*Moyer*, *Wimber*, and *Pachmayr* show that, when determining whether an indictment was defective in form, this court has focused on the constitutional purposes of an indictment, one of which is to ensure that a defendant is tried based on the facts found by the grand jury. *Moyer*, 76 Or at 401; *Pachmayr*, 344 Or at 495. If an indictment fails to serve that purpose, it is defective in substance. *Moyer*, 76 Or at 401.

Another constitutional purpose of an indictment is to provide notice of the crime charged. *Wimber*, 315 Or at 115; *Pachmayr*, 344 Or at 490. As this court stated in *Wimber*, an indictment must inform the defendant "'of the nature and character of the criminal offense with which

he is charged with sufficient particularity to enable him to make his defense[.]'" 315 Or at 115 (quoting *State v. Smith*, 182 Or 497, 500-01, 188 P2d 998 (1948)); 315 Or at 109-10 (citing *Smith*, 182 Or at 502, for the proposition that, when a statute describes an offense in generic terms, a statement of particular circumstances may be necessary). If an indictment does not provide such notice, it is defective in substance.

In *Wimber*, when determining whether an amendment to an indictment was permissible, this court asked itself three questions:

> "(1)   Did the amendment alter the essential nature of the indictment against defendant, alter the availability to him of defenses or evidence, or add a theory, element, or crime? * * *

> "(2)   Did the amendment prejudice defendant's right to notice of the charges against him and to protection against double jeopardy? * * *

> "(3)   Was the amendment itself sufficiently definite and certain?"

315 Or at 114-15. Thus, *Wimber* reflects that a grand jury indictment binds the state; a district attorney may not amend an indictment in a way that alters the available evidence or defenses or adds a theory, element, or crime. It also reflects that an indictment must provide notice of the nature and character of the crime charged so that the defendant is not prejudiced in his ability to make a defense or his ability to protect against double jeopardy. Finally, it reflects that, if an amendment is made, it must be sufficiently definite and certain, so that it does not prevent the indictment from binding the state or providing adequate notice.

In *Wimber*, this court answered the three questions and held that the amendment, which shortened the time period alleged, was permissible. As mentioned, this court concluded that the amendment did not enable the state to try the defendant on facts other than those found by the grand jury, noting that the amendment did not alter the availability of defenses or evidence or add a new or different theory, element, or crime. *Id*. at 114. This court also concluded that

the amendment did not prejudice the defendant's right to notice of the nature and character of the charges against him or his right to protection against double jeopardy. *Id*. at 115. And, finally, this court concluded that the amendment was sufficiently definite and certain. *Id*.

This court followed *Moyer* and *Wimber* in *Pachmayr*, its most recent case involving the amendment of an indictment. This court again focused on whether the indictment, as issued by the grand jury, was sufficient to serve its constitutional purposes. Applying the first two questions that it had set out in *Wimber*, this court concluded that the amendment was permissible because it did not alter or add to the facts found by the grand jury, 344 Or at 493, and because it did not prejudice the defendant's right to notice of the allegations against him, *id*. at 494. (In *Pachmayr*, this court did not need to apply the third question, regarding whether the amendment was sufficiently definite and certain, because the amendment in the case deleted surplusage.)[3]

To summarize, *Moyer*, *Wimber*, and *Pachmayr* show that, when determining whether an indictment is defective in substance, this court considers whether the indictment is sufficient to serve its constitutional purposes, which include ensuring that the defendant is tried based on the facts found by the grand jury and providing adequate notice to the defendant. If an indictment is not sufficient to serve

---

[3] In *Pachmayr*, the defendant drove a car across a highway median and into another car, injuring three other persons, and a grand jury indicted defendant for three counts of second-degree assault. Two of the counts alleged that the defendant had caused the injuries using a "dangerous weapon," but one of them alleged that he had caused the injuries using a "deadly weapon." All the counts identified the weapon as "an automobile." At trial, after the state's case-in-chief, the defendant moved for a judgment of acquittal on the count that alleged that he had caused the injuries with a "deadly weapon," arguing that a car is not a "deadly weapon" as defined by the applicable statute. The state acknowledged that a car is not a "deadly weapon" and moved to amend the indictment to replace "deadly weapon" with "dangerous weapon." The trial court allowed the amendment and, on review, this court affirmed, reasoning that, "although the original indictment did not use the phrase 'dangerous weapon,' it contained all of the allegations that were necessary to make out a charge under that theory: that defendant drove a car, and did so under circumstances that made it capable of causing death or serious physical injury." 344 Or at 492. For support, the court cited cases holding that surplusage does not render an indictment insufficient. *Id*. at 493 (citing *State v. Humphreys*, 43 Or 44, 48, 70 P 824 (1902), and *State v. Horne*, 20 Or 485, 486, 26 P 665 (1891)).

its constitutional purposes, then it is defective in substance and the defect cannot be cured by an amendment. Relatedly, a district attorney cannot make a substantive amendment, which includes an amendment that alters the available evidence or adds a new theory.

Applying *Moyer*, *Wimber*, *and Pachmayr* to this case leads to the conclusion that, as issued by the grand jury, the indictment against defendant was defective in substance. As described above, the indictment charged defendant with multiple crimes, but did not allege the basis for joining the charges in a single indictment. Because of that omission, the indictment was ambiguous. It was not clear whether the charges were based on a single act, different acts in a single incident, or different acts in separate incidents. Because of that ambiguity, the indictment was insufficient to serve its constitutional purposes; it failed to ensure that defendant was tried upon the facts found by the grand jury, and it failed to provide adequate notice to defendant of the charges against him. The burglary counts illustrate the problem.

The indictment charged defendant with two counts of first-degree burglary. Both counts alleged that defendant entered and remained unlawfully in an apartment with the intent to commit a crime. One count alleged that defendant intended to commit theft, Count 5, and the other alleged that defendant intended to commit menacing, Count 6. The indictment did not indicate whether the charges were based on the same act or separate acts. As a result, it was not clear whether the grand jury had found that defendant entered and remained unlawfully two times, with a different intent each time, or that defendant entered and remained unlawfully one time, but with two different intents. As mentioned, even the district attorney could not tell what the grand jury had found. The state took different positions on the issue over the course of the trial court proceedings. Before trial, the state took the position that the charges were based on two incidents, one in the morning and one in the afternoon. At trial, however, the state changed its position and asserted that the charges were based only on the morning incident.

The state's changing versions of events throughout the course of the trial proceedings show that the indictment

was defective in substance; it did not provide adequate notice of the facts on which the grand jury based the charges and, as a result, it failed to ensure that defendant was tried based on those facts. Unlike *Pachmayr*, this is not a case where this court can be "satisfied that the grand jury *** found the facts" on which the defendant was tried. 344 Or at 495. Indeed, given the multiple versions of events the state presented throughout the proceedings in the trial court, it is impossible to draw any reasonable conclusions about what evidence was presented to the grand jury and what facts it found.

In addition, because the indictment was ambiguous, it failed to provide defendant with adequate notice "'of the nature and character'" of the crimes charged "'with sufficient particularity to enable him to make his defense[.]'" *Wimber*, 315 Or at 115 (quoting *Smith*, 182 Or at 500-01). Here, defendant was left to guess what acts the grand jury had based the charges on and what theory (or theories) the state would pursue. *See Warren*, 364 Or at 121 n 6 (noting that the failure to allege the basis for joinder can impair a defendant's ability to make a defense because it can put the defendant in the position of having "to guess as to whether charges are based on the same or separate incidents"). In addition, because it was not clear what acts the charges were based on, the indictment did not provide defendant with the information he was entitled to have in order to protect against the admission of irrelevant or unfairly prejudicial evidence of other acts.[4] It also failed to provide him with the information he was entitled to in order to protect against improper joinder. *Warren*, 364 Or at 121-22 (explaining that allegations of the basis for joining charges is necessary so that the defendant can make "an informed choice about whether to demur to the indictment on the ground that the allegations are insufficient to support joinder and, later, to make an informed decision about whether to move

---

[4] A hypothetical illustrates the problem: If a grand jury finds that a defendant committed multiple crimes during a single incident but issues an indictment that fails to allege the basis for joinder, the defendant will not have the information he needs to prevent the state from proceeding on a theory that the crimes were committed in multiple incidents, as the district attorney did in this case when he amended the indictment, which created a basis for the admission of evidence of both incidents.

to sever on the ground that the evidence is insufficient to support joinder").

Looking at the amendment itself also leads to the conclusion that the amendment was impermissible. The amendment added allegations to the indictment about the relationship between the charged crimes. It alleged, among other things, that the counts were based on two or more acts or transactions. As such, the amendment introduced a theory—specifically, that defendant had committed the crimes during two different incidents—which the indictment did not reflect and which, given the varying versions of events, may not have been the theory on which the grand jury based the charges.[5] The amendment was significant because it provided a basis for the state to introduce evidence of both incidents. In doing so, it reduced the defendant's ability to exclude potentially prejudicial evidence.

Finally, looking to general propositions regarding the differences between matters of substance and matters of form also leads to the conclusion that the indictment's failure to allege the basis for joinder of the charges was not a mere defect in form. In *Moyer*, this court stated that a matter that must be "proved as alleged" is a matter of substance.

---

[5] The majority asserts that the joinder allegations added by the district attorney did not add any "factual allegations about the crimes." 366 Or at 386. I disagree. Joinder allegations are factual allegations about the charged crimes. In order for the grand jury to issue an indictment that charges two offenses, the conduct underlying each charge must be related in a way that justifies joinder. How the conduct is related (if at all) is a factual question. Is the first charge based on the very same act as the second one or were there two separate acts? If there were two separate acts, were they related by a common scheme or plan? Those are factual questions. When alleged in an indictment, the answers to those questions are allegations of historical fact about the charged crimes.

Even more importantly, when, as here, it is not clear from the indictment whether two charges were based on the same act or different acts and the district attorney amends the indictment to allege that they are based on different acts, the district attorney is selecting which acts the charges are based on. In *Moyer*, this court held that a district attorney could not amend an indictment to add a factual allegation regarding an element, so a district attorney should not be able to amend an indictment in a way that can add a criminal act.

The majority refers to the joinder allegations as "allegations specifying the *statutory basis* for joinder." *E.g.,* 366 Or at 386, 399, 411, 419 (emphasis added). The permissible bases for joinder are specified by statute, but that does not mean that an allegation of a basis for joinder is not an allegation of historical fact. Elements of a crime are specified by statute, and allegations of elements are allegations of historical fact.

76 Or at 400 (citing 22 *Cyclopedia of Law and Procedure* 439 (William Mack ed 1906)). The basis for joinder is such a matter. If the state joins two or more charges, it must prove the basis for joinder in order to obtain convictions on both charges. If the state does not present such evidence, the state can proceed on only one of the charges. *State v. Fitzgerald*, 267 Or 266, 273, 516 P2d 1280 (1973) (holding that, where the state failed to prove at trial that the two charged crimes were part of the same transaction as alleged, the trial court erred in denying defendant's motion to have the state elect between the two crimes). Thus, the basis for joinder is a matter that must "be proved as alleged." *Moyer*, 76 Or at 400. For that additional reason, it is a matter of substance.

To summarize, I conclude that, under this court's case law, the indictment's failure to allege the basis for joinder in this case was not a mere defect in form for three independent reasons. First, as a result of the failure to allege the basis for joinder, the indictment was too ambiguous to serve its constitutional purposes. It was not sufficient to ensure that defendant would be tried for the acts that the grand jury relied on when it approved the prosecution, and it was not sufficient to provide defendant with the notice to which he was entitled to prepare and present his case. Second, the amendment itself was impermissible because it added a theory and altered the evidence that could be admitted. Third, the failure to allege the basis for joinder was a substantive defect because the bases for joinder must be proved as alleged.

Concluding that the grand jury must find and allege facts that justify the joinder of charges makes practical sense. Whether charges can be joined depends on the relationship between the acts on which the charges are based. Because the grand jury is the entity that determines what acts a defendant engaged in, it is in the best position—and perhaps the exclusive position—to determine whether the acts underlying multiple charges are related in a way that justifies joinder. This case illustrates that point. The district attorney could not tell what acts the charges were based on and, therefore, he was not in a position to make allegations about how the acts were related. When the district attorney amended the indictment, he did so based on his own

beliefs about what acts defendant had committed (beliefs that changed over the course of the case). In doing so, he supplanted the grand jury's findings regarding the defendant's acts with his own. That was impermissible.[6]

In concluding that the indictment's failure to allege the basis for joinder was a defect in form, the majority relies on language in *Moyer*. 366 Or at 405. But *Moyer* states that "any omission" that prevents an indictment from "showing what offense [it] is intended to charge is a defect in matter of substance which cannot be cured by amendment," 76 Or at 400 (internal quotation marks omitted), and, here, the ambiguity resulting from the failure to allege the basis for joinder was such an omission because it prevented the indictment from showing what acts the charges were based on. In addition, *Moyer* states that "the power of amendment extends to formal matters which are not essential to the charge and mere clerical errors, etc., where the defendant cannot be misled or prejudiced," *id.* (internal quotation marks omitted), but here, the amendment was prejudicial because it introduced a new theory, which may not have been the theory relied on by the grand jury.

B.   *Historical Analysis*

An examination of intent underlying the constitutional limitation on a district attorney's authority to amend an indictment also leads to the conclusion that the grand jury must find and allege facts sufficient to justify the joinder of charges. Currently, that limitation is in Article VII (Amended), section 5(6), which provides:

> "An information shall be substantially in the form provided by law for an indictment. *The district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form.*"

---

[6] I note that, if the district attorney did not want to resubmit the case to the grand jury to make and allege the findings necessary to join the charges, the district attorney could have proceeded by filing a district attorney's information and submitting the case for a preliminary hearing. During the hearing, the magistrate would serve as a neutral factfinder, responsible for making the fact findings regarding what acts the defendant committed and how they were related, if at all.

(Emphasis added.) As explained below, the limitation was added to the constitution as part of an amendment in 1908, and it has remained in the constitution unchanged since then. The amendment was the result of an initiative petition approved by the voters. Consequently, when interpreting the amendment, our goal is to ascertain the intent of voters who approved it. *AAA Oregon/Idaho Auto Source v. Dept. of Rev.*, 363 Or 411, 417-18, 423 P3d 71 (2018) (stating that, when interpreting the text of a constitutional provision imported from a previous version of the provision, this court's task is to determine the intent underlying the previous version); *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993) ("In interpreting a constitutional provision adopted through the initiative process, our task is to discern the intent of the voters."). It is their understanding of the different roles of grand juries and district attorneys that matters.

    1.   *Pre-1908 constitutional and statutory provisions governing grand juries and indictments*

It is useful to begin with a review of the history of the state constitutional and statutory provisions governing grand juries and indictments. When the Oregon Constitution was ratified in 1857, it contained a provision, Article VII (Original), section 18, that stated:

> "The Legislative Assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and out of the whole number in attendance at the court, seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment: But the Legislative Assembly may modify or abolish grand juries."

In addition to that constitutional provision, the state had criminal procedure statutes that governed the initiation of criminal prosecutions. The statutes were first codified in 1866 in the Deady Code. Under the codified statutes, the only way a person could be charged with a crime in a state district or circuit court was by grand jury indictment. General Laws of Oregon, Crim Code, ch I, § 5, p 442 (Deady 1845-1864). In addition, the statutes established requirements for, and limitations on, grand juries and indictments.

Among other things, the statutes established grand juries' authority and responsibilities. *Id.* at Crim Code, ch VI, pp 449-51 (powers and duties of grand jury). They also specified the information that an indictment had to contain and provided that, if an indictment did not contain that information, a defendant could demur to it, which would result in a judgment in the defendant's favor on the indictment, and the charge could only be brought if a new grand jury indictment was issued. *Id.* at Crim Code, ch VII, pp 451-52 (finding and presentation of the indictment); *Id.* at Crim Code, ch VIII, pp 453-57 (required content and form of indictments); *Id.* at Crim Code, ch XI, pp 461-63 (demurrers); *Id.* at Crim Code, ch X, pp 460-61 (resubmission to grand jury required after successful demurrer or motion to set aside indictment).

In 1899, the legislature established an additional method for charging a person with a crime; it enacted statutes that provided that a person could be charged by a district attorney's information. Or Laws 1899, §§ 1-7, pp 99-100; *The Codes and Statutes of Oregon*, title XVIII, ch IV, §§ 1258-1264 (Bellinger & Cotton 1901). Thereafter, district attorney informations were used to charge even the most serious crimes. *See, e.g., State v. Blodgett*, 50 Or 329, 331, 92 P 820 (1907) ("The defendant by information of the district attorney was charged with the crime of murder in the first degree ***.").

The use of district attorney informations gave rise to concerns about potential abuses of power. Motivated by those concerns, citizens filed an initiative petition to amend Article VII, section 18, to require grand jury indictments in all criminal prosecutions. The initiative was submitted to the voters in the June 1908 general election, and the proposed amendment to Article VII, section 18, was set out in the Official Voters' Pamphlet as follows:

"Section 18.   The Legislative Assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and out of the whole number in attendance at the court, seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment. No person shall be charged in any Circuit Court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State,

except upon indictment found by a grand jury. *Provided, however*, that any District Attorney may file an amended indictment whenever an indictment has, by ruling of the court, been held to be defective in form."

Official Voters' Pamphlet, General Election, June 1, 1908 (1908 Voters' Pamphlet), 115 (emphasis in original). As is apparent from its text, the purpose of the amendment was to establish, as a constitutional requirement, that no person could be prosecuted for a violation of the state's criminal laws unless a grand jury approved the prosecution through an indictment.

The proponents of the amendment believed that the then-current statutes, which authorized district attorneys to charge crimes through informations, vested too much power in a single government official and that the power could be abused for personal or political reasons. They urged voters to approve the amendment in order to guarantee that citizens, as grand jurors, played a gatekeeping role in the administration of the state's criminal laws. In the only Voters' Pamphlet statement concerning the amendment, the proponents explained:

"Under the present law, any district attorney can file an information against a man for any crime, from murder down. The accused is not entitled of right to any preliminary hearing and the first he knows of the matter may be his arrest. He may never be tried at all, the information or indictment may be dismissed, and yet his record is blackened. It may be that it is not intended from the start that he ever should be tried, but the information is issued to serve some political purpose, private revenge or the scheme of a ring hostile to the victim. It is un-American. It is too much like the despotism of Russia and it is too much power to be vested in the hands of any one man. The whole history of Anglo-Saxon institutions is a battle against this very thing: the power of one man to brand another with crime and lodge him in prison. It is a return to the Star Chamber decrees of Charles I and the time was when Englishmen and Americans thought no time or money thrown away which protected every citizen from arbitrary arrest and arbitrary arraignment and trial at the will of a single man. In England the same jealousy exists today, and no man can be brought to trial save on an indictment by a grand jury. The fathers of our country were careful to write that into

the United States Constitution, but it is not yet an article of the State Constitution. The time has come when it should be there, for the time will inevitably come when wealth and great interests will seek to shut the mouth of every man who is against them; and if we may judge the future by the past, the powerful interests are apt to control the political offices, including the district attorney.

"The only argument urged against this amendment is that the present plan is cheaper. If the citizens of Oregon prefer a few dollars to a great fundamental principle of personal liberty, then they certainly do not deserve their liberties and they might as well be left open to the whims, vengeance, mistakes or political intrigues of any district attorney. The citizens of this country will make a great mistake if they let go that part of the administration of the law which belongs to them through the grand jury and the petty jury, and we repeat that this present arbitrary power lodged in one man is un-American and dangerous."

1908 Voters' Pamphlet at 116-17. Thus, the clear purpose of the amendment was to protect the role of grand juries in the initiation of criminal prosecutions and to limit the role of district attorneys. The voters approved the amendment. *See* Or Laws 1909, p 12 (recording approval). Their approval reflects their determination that, as a matter of state constitutional law, grand juries were to be responsible for initiating prosecutions and that they were to do so through indictments.[7]

Because the voters who approved the amendment sought to protect the role of grand juries and to require indictments, the statutes that governed grand juries and indictments at the time shed light on what the voters

---

[7] In 1910, the voters approved another initiative, which replaced Article VII (Original), section 18, but did not alter the text at issue in this case, which became part of Article VII (Amended), section 5(6). *See* Or Laws 1911, pp 7-8 (recording approval). In 1974, the voters approved a legislative referral, which amended Article VII (Amended), but that amendment did not alter the text at issue either. It authorized charging a person with a felony through a preliminary hearing before a magistrate. SJR 1 (1973) (referring the measure); Or Laws 1975, p 6 (recording approval). As mentioned, because the text at issue has remained the same since it was first added to the constitution by the voters in 1908, our goal is to ascertain the intent of those voters. 366 Or at 436-37 (Duncan, J., dissenting) (citing *AAA Oregon/Idaho Auto Source*, 363 Or at 417-18, and *Roseburg School Dist.*, 316 Or at 378).

would have understood the role of the grand jury to be, including what determinations the grand jury—as opposed to the district attorney—was to make. *See Pachmayr*, 344 Or at 486 (looking to the statutes in effect in 1908 when determining the meaning of "defective in form" in Article VII (Amended), section 5(6)). As explained below, the then-existing criminal procedure statutes required grand juries to make certain factual findings in order to perform their gatekeeping role; in addition, the statutes required that the grand juries' indictments reflect those findings. Those findings included findings about the defendant's conduct, which were relevant to the elements of the charged crime. But, they were not limited to those findings. They also included findings about the time and location of the person's conduct, which were relevant to whether the grand jury could issue an indictment, given the applicable statute of limitations and the grand jury's jurisdiction. And, they included findings about whether the person's conduct constituted one crime or more than one crime; if it constituted more than one crime, the grand jury had to issue separate indictments for each crime.

Regarding a person's conduct, the statutes authorized a grand jury "to inquire of crimes committed or triable within the county from which [it was] selected." *The Codes and Statutes of Oregon*, title XVIII, ch V, § 1265 (Bellinger & Cotton 1901). If a grand jury determined what conduct the person had engaged in, but was unsure whether that conduct constituted a crime, the grand jury could make a "presentment of the facts" to the court and ask the court to instruct it on the law. *Id.* § 1279. Grand jurors were to issue an indictment when "all the evidence before them, taken together, [was] such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury." *Id.* § 1284. The indictment had to contain, among other things, "[a] statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what [was] intended." *Id.* § 1303. In addition, in order for an indictment to be sufficient, "the act or omission charged as the crime [had to be] clearly and distinctly set forth." *Id.* § 1314.

Regarding the time the crime was committed, the statutes provided that, although the indictment usually did not need to allege the precise time the crime was committed, it did need to allege that the crime was committed within the applicable statute of limitations. Specifically, section 1309 of those statutes provided:

> "The precise time at which the crime was committed need not be stated in the indictment, but it may be alleged to have been committed at any time before the finding thereof, and within the time in which an action may be commenced therefor, except where time is a material ingredient in the crime."

The statutes also provided that a grand jury could make a presentment of facts to the court and request that the court instruct them on the law, so that they could determine whether the conduct "had ceased to be punishable by reason of lapse of time." *Id.* § 1279. If a grand jury issued an indictment, the indictment had to reflect that "the crime was committed at some time prior to the finding of the indictment, and within the time limited by law for the commencement of an action therefor." *Id.* § 1314.

Regarding the location of the crime, the statutes provided that a grand jury had authority "to inquire of crimes committed or triable within the county from which they [were] selected." *Id.* § 1265 (defining jurisdiction of grand jury); *id.* § 1277 (providing that grand jury has the power to "inquire into all crimes committed or triable in the county"); *see also id.* § 1271 (requiring grand jurors to take an oath to inquire into crimes "committed or triable within this county"). The statutes also provided that, to be sufficient, an indictment had to reflect that "the crime was committed within the jurisdiction of the court, except where, as provided by law, the act, though done without the county in which the court is held, is triable therein." *Id.* § 1314.

Finally, the statutes provided that an indictment could not charge more than one crime. Specifically, section 1308 stated, "The indictment must charge by one crime, and in one form only; except that where the crime may be committed by use of different means the indictment

may allege the means in the alternative." Accordingly, the statutes required that an indictment include "a statement of the acts constituting the offense," *id.* § 1303, and referred to "the offense" or "the crime" in the singular, *e.g.*, *id.* §§ 1309, 1314.

Together, the statutes governing grand juries and indictments show that the grand jury was the entity responsible for making findings about what acts a person had committed, when and where the person had committed the acts, and how the acts were related, specifically, whether the acts constituted one or more crimes. That the grand jury was responsible for those findings was consistent with its gatekeeping role because the determinations protected against improper prosecutions. They protected against prosecutions that were not supported by sufficient evidence, that were time-barred, that could not be brought in the county where the grand jury was seated, and that violated the limit on the number of charges that could be litigated together.

In addition, the criminal procedure statutes provided a mechanism through which a defendant could stop a prosecution if an indictment did not reflect that the grand jury had made the findings necessary to issue a proper indictment. That mechanism was a demurrer. *Id.* at §§ 1355-1365. The grounds for a demurrer were set out in § 1357, which provided:

> "The defendant may demur to the indictment when it appears upon the face thereof either,—
>
> "1.   That the grand jury by which it was found had not legal authority to inquire into the crime charged because the same is not triable within the county;
>
> "2.   That it does not substantially conform to the requirements of chapter VIII of title XVIII of this code;
>
> "3.   That more than one crime is charged in the indictment;
>
> "4.   That the facts stated do not constitute a crime;
>
> "5.   That the indictment contains any matter which, if true, would constitute a legal justification or excuse of the crime charged, or other legal bar to the action."

Thus, a defendant could demur to an indictment for several reasons, including that the indictment did not substantially comply with the statutes governing the form and contents of an indictment, one of which provided that an indictment could charge only one crime. If a defendant demurred to an indictment, the trial court was required to "give judgment, either allowing or disallowing [the demurrer]" and to enter an entry in the journal "to that effect." *Id.* § 1360. If the court allowed the demurrer, "the judgment [was] final upon the indictment," unless the court determined "that the objection on which the demurrer [had been] allowed may be avoided in a new indictment" and directed "the case to be resubmitted to the same or another grand jury." *Id.* § 1361.

Of particular relevance here, a defendant could demur to an indictment on the ground that it did not comply with the statutory limit on the number of charges that could be brought. Stated differently, a defendant could demur to an indictment on the ground that it improperly joined charges. If the defendant was correct, then the trial court had to allow the demurrer and enter a judgment on the indictment in the defendant's favor. Then, if the court determined that the defect could be avoided in a new indictment, the court could direct that the case be resubmitted to the same or another grand jury. All of that is significant because it indicates that the grand jury was the entity responsible for making the findings relevant to the number of crimes that could be charged in an indictment. In turn, that indicates that, in 1908, when the voters amended the constitution to protect the role of the grand jury and eliminate district attorney informations, they intended that the grand jury—not the district attorney—would make such findings. And, as explained in the following section, the contemporaneous case law bears that out.

2.   *Pre-1908 cases concerning the limit on the number of crimes charged*

Cases decided before 1908 show that an indictment had to reflect that the grand jury had made the determinations necessary to charge the proper number of crimes, which at the time was one. That requirement was the basis for a rule, repeated in several cases, that, if a statute defining a

crime included a disjunctive list of acts that could constitute the crime, an indictment alleging more than one of those acts had to list the acts in the conjunctive. *State of Oregon v. Dale*, 8 Or 229, 231 (1880); *State of Oregon v. Bergman*, 6 Or 341, 344 (1877); *State of Oregon v. Carr*, 6 Or 133, 134 (1876). As this court stated in *Carr*, "When the statute makes it a crime to do this or that, mentioning several things disjunctively, the indictment may, as a general rule, embrace the whole in a single count, but it must use the conjunctive 'and' where 'or' occurs in the statute[.]" 6 Or at 134. In other words, an indictment could allege multiple acts, but only if the acts were alleged to have been committed as part of a single crime. Thus, the indictment had to reflect a determination that the acts were related in a way that allowed them to be joined in a single indictment.

   *State v. Clark*, 46 Or 140, 80 P 101 (1905), is illustrative. In *Clark*, a grand jury indicted the defendants for first-degree theft and the indictment alleged that the defendants stole one horse belonging to one person and two horses belonging to another person. The defendants demurred to the indictment on the ground that it charged more than one offense, in violation of the statutory limit. The trial court disallowed the demurrer and this court affirmed. It explained that "the stealing of articles belonging to two or more persons at the same time and place constitute[d] but one offense, and may so be charged in an indictment," *id*. at 141-42, provided that the indictment alleged that the articles were taken "at the same time and place," *id*. at 142. This court held that the indictment in the case "sufficiently complie[d] with the rule, by alleging that the articles belonging to the persons named were, *as a matter of fact*, stolen at the same time and place, and by the same act." *Id*. (emphasis added). Notably, this court explained that alleging that the articles were stolen on the same date and in the same county would not have been sufficient; the indictment had to allege that the horses had been stolen "at one and the same time." *Id*. Thus, *Clark* shows that, if an indictment alleged multiple acts, it had to include an allegation that the acts were related in a way that justified charging them in a single indictment; it also shows that that allegation was an allegation of historical fact. The nature of that allegation

indicates that it was for the grand jury to make; it depended on the grand jury's findings about what the defendants had actually done. *See Warren*, 364 Or at 115 (stating that, "for more than one hundred years, Oregon law has limited the number of offenses that can be charged in a single charging instrument and has required that charging instruments allege *facts* sufficient to demonstrate compliance with those limits") (emphasis added).

*State v. Fiester*, 32 Or 254, 50 P 561 (1897), also indicates that whether multiple acts can be charged in a single indictment is a matter for the grand jury. In *Fiester*, the defendant was charged with first-degree murder, and the indictment alleged that he had committed multiple acts against the victim. The acts were alleged in the conjunctive. Specifically, the indictment alleged that defendant "did then and there * * * kill [the victim], by then and there beating her with his fists, and by choking her, and by pushing and dragging her into the water, and holding her under the water, whereby she was drowned." *Id*. at 255-56. The defendant demurred to the indictment, and the trial court disallowed the demurrer. On appeal, this court affirmed on the ground that the grand jury could charge multiple acts in a single indictment if *the grand jury* found, based on the evidence *before it*, that the acts were part of the charged crime; it explained:

> "[T]he means [by which the murder was committed] being known to the grand jury, it was proper to allege them conjunctively, for it may have been that, in consequence of the alleged beating and choking of the deceased, the defendant was enabled to drag her to and hold her under water, until life was extinct; and *if such were the case, and the facts were known to the grand jury*, all these acts constituted the means by which the deed was accomplished."

*Id*. at 259 (emphasis added). That explanation indicates that it was the grand jury's role to determine whether multiple acts could be charged together and, if so, to allege them in a manner that reflected that it had made that determination.

The cases just discussed—which predate the 1908 amendment and, therefore, provide context for the amendment, *Coultas v. City of Sutherlin*, 318 Or 584, 589-90, 871

P2d 465 (1994) (examining earlier case law construing initiated constitutional amendment in question)—all concern whether multiple acts could be alleged in a single indictment. That is because, at the time, the statutory limit on the number of crimes that could be charged in a single indictment was one and there were no exceptions to that limit. Since then, exceptions have been added to allow for joinder of crimes. In 1933, an exception was added to allow for the joinder of crimes that were based on "the same act or transaction." Or Laws 1933, ch 40, § 1. Then, in 1989, two more exceptions were added, one for joinder of crimes that were "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan," and another for crimes that were "[o]f the same or similar character." Or Laws 1989, ch 842, § 1. Although the pre-1908 cases do not address joinder of crimes under those exceptions, they establish a basic rule—specifically, that a grand jury must make and allege the findings necessary to charge the proper number of crimes—that leads to the conclusion that a grand jury must make the findings necessary to join crimes in a single indictment.

Given the criminal procedure statutes and the case law that existed in 1908, the voters, who amended the constitution to protect the grand jury's role and limit the district attorney's role, would have intended that a grand jury—not a district attorney—make the determinations necessary to show that crimes were properly joined. Consequently, they would not have regarded the failure to allege the basis for joinder as a "defect in form" that a district attorney could fix. Under the criminal procedure statutes in effect at the time, if an indictment failed to allege the basis for joining multiple acts, the indictment was insufficient and a defendant could demur to it. *Dale*, 8 Or at 231 (stating that if an indictment charged a defendant with multiple acts in the disjunctive, the indictment was "bad"). If the defendant did, the defendant was entitled to a judgment on the indictment. *See State v. Jarvis*, 18 Or 360, 361, 23 P 251 (1890) (stating that, if an indictment is "bad" and "if the objection be taken by demurrer at the proper time, it must prevail"); *State v. Hinkle*, 33 Or 93, 54 P 155 (1898) (stating that, if a defendant demurred to an indictment on the ground that it did not comply with

the statutory limit on the number of crimes that could be charged, "the objection to the pleading [was] not waived by a plea of not guilty, nor [was] the error cured by a judgment of conviction"). The fact that a defendant could successfully demur to an indictment on the ground that it failed to allege the basis for joining multiple acts further indicates that the failure was not a "defect in form." *See The Codes and Statutes of Oregon*, title XVIII, ch VIII, § 1315 (Bellinger & Cotton 1901) (providing that no proceeding or judgment could be affected by defect in form that did not prejudice a defendant's substantial rights). To the contrary, it was a failure related to the required contents of the indictment and, as such, it was a "defect in substance."[8]

The criminal procedure statutes that existed in 1908 support that view. They indicate that "form" was used to describe the basic structure of a pleading, that is, how the required allegations were to be set out. Indeed, the statutes included a sample "form of indictment" that could be used as a template, as well as an appendix with additional sample indictments for charging particular crimes. *The Codes and Statutes of Oregon*, title XVIII, ch VIII, § 1304-05 (Bellinger & Cotton 1901).[9] The statutes allowed for some variation in form but did not allow for the omission of required

---

[8] In concluding that the failure to allege the basis for joinder is a defect in form, the majority relies on the fact that a defendant could waive the right to have the allegation in the indictment. The majority cites cases that hold that, if a defendant does not demur to an indictment on the ground that it violates the statutory limit on the number of crimes that could be charged, the defendant waives that objection. 366 Or at 418. Those cases concern preservation. They do not alter the fact that a defendant has a right to have the allegation in an indictment or the fact that, if the defendant does demur to the indictment, he or she is entitled to a judgment on the indictment in his or her favor.

[9] Dictionaries of the time, including those cited by the majority, are consistent with view of "form." For example, *Abbott's* definition of "form" provides:

"The shape or structure of a thing, as distinguished from the material of which it is composed; mode of arrangement. In law, most frequently an established method or practice; a fixed way of proceeding; a formula. *A model of an instrument; a pleading or other legal proceeding, containing the essential requisites so arranged as to be used in accordance with the laws, is frequently termed a form*; or, where a legal proceeding is pursued in the manner and order required by law, it is said to be in proper form."

Benjamin Vaughan Abbott, 1 *Dictionary of Terms and Phrases Used in American or English Jurisprudence* 516 (1987) (emphasis added). Similarly, *Bouvier's* defines "form," in part, as, "[t]he model of an instrument or legal proceeding, containing the substance and the principle terms to be used in accordance with the laws."

allegations. Because an allegation of the basis for joinder is required, *Carr*, 6 Or at 134; *Dale*, 8 Or at 231; *Warren*, 364 Or 105, 121-22, the failure to include such an allegation when charging multiple acts or crimes, is not a defect in form.

## III.   CONCLUSION

To summarize, I conclude that allegations of the basis for joining charges—including those phrased in the language of the joinder statute—are factual allegations concerning the charged crimes. For example, an allegation that two charged crimes are based on two transactions constituting parts of a common scheme or plan is an allegation of historical fact. It depends on the grand jury's factual findings about the acts underlying each charge and it is itself a factual finding about the relationship between the acts. As such, it is within the exclusive fact-finding province of the grand jury. Consequently, it is not an allegation that can be added to an indictment by a district attorney.

Moreover, in this case, the indictment's failure to allege facts sufficient to support the joinder of charges is not a defect in "form" for the purposes of Article VII (Amended), section 5(6). Whether a defect is a defect in form or a defect in substance depends on whether, despite the defect, the indictment is sufficient to serve its constitutional purposes. Here, as a result of the failure to allege the basis for joining the charges, the indictment was ambiguous. Even the district attorney could not tell what acts the charges were based on. Consequently, the indictment failed to ensure that defendant was tried based on the facts found by the grand jury and failed to provide defendant with the notice to which he was entitled in order to respond to the charges.

Finally, the indictment's failure to allege the basis for joinder is not the type of amendment that fits within

---

John Bouvier, 1 *Bouvier's Law Dictionary* 881 (1897). And, one of the definitions of "form" in *Black's* is:

> "A model or skeleton of an instrument to be used in a judicial proceeding, containing the principal necessary matters, the proper technical terms or phrases, and whatever else is necessary to make it formally correct, arranged in proper order, and capable of being adopted to the circumstances of the specific case."

*Black's Law Dictionary* 510 (1st ed 1891).

the district attorney's constitutionally limited authority to amend an indictment. The constitutional limit, first enacted in 1908, was intended to protect the role of the grand jury, which—at the time the limit was imposed—already included finding and alleging facts sufficient to show that the indictment did not allege more crimes than the law permitted within a single indictment.

For those reasons, I would conclude that the trial court erred in allowing the prosecutor to amend the indictment in this case, and I respectfully dissent from the majority's opinion concluding otherwise.